## In re DANN.
### No. 2594.

Court of Customs and Patent Appeals.
March 2, 1931.

Horace B. Fay, of Cleveland, Ohio (Fay, Oberlin & Fay, of Cleveland, Ohio, and George E. Tew, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Nine claims are before us on appeal from a decision of the Board of Appeals of the Patent Office affirming the action of the Examiner disallowing them. Ten were in this appeal, but the one numbered 7 was withdrawn during the argument before us.

The alleged invention is, in the application, designated as "new and useful improvements in Liquid Reservoir."

More specifically it comprises a combination of elements which combination results in a reservoir for writing fluid—ink—provided with an inclined rigidly positioned conduit designed to receive a penholder, with pen therein, in such manner as that the pen will extend into the ink to a determined point when the holder is inserted into the conduit, the holder being provided with a shoulder which engages the inner surface of the conduit in a manner that serves to seal the opening and prevent evaporation of the fluid. There is provided also a capillary tube adapted to draw the fluid from the reservoir against the action of gravity and store it in space in communication with the pen, thus keeping the holder automatically filled with ink. A small vent is provided in the reservoir cover, and the reservoir has certain described dimensions.

It may here be remarked that in our judgment applicant has presented an unnecessarily large number of claims. We can see no reason why all that he discloses in this relatively simple device might not have been embraced in a much smaller number.

Numbers 4, 13, and 16, as drawn, appear to comprise all the features, except a vent claimed in 14. No. 5 contains a limitation hereinafter referred to.

"4. In apparatus of the character described, the combination of a reservoir adapted to receive writing fluid and having an upwardly extending conduit in communication with its interior, a pen holder received within said conduit in a pre-determined position, a pen in said holder, said pen being immersed in the fluid in said reservoir, and means in said pen adapted to draw fluid from said reservoir against the action of gravity, and store the same in communication with said pen."

"13. In apparatus of the character described, the combination of a base provided with a shallow reservoir having a depth approximating the exposed length of an ordinary pen and a maximum horizontal dimension of several times its depth, a cover for said chamber comprising a member adapted to fit snugly therein and having a conduit extending from above the level of the top of said base to a point closely adjacent the level of the top of said base to a point closely adjacent the level of the bottom of said chamber, and a pen holder and pen received within said conduit, said holder having a substantially unyielding exterior surface making a substantially sealing engagement with the wall of said conduit at a point above the top of said chamber, and said pen extending to substantially the bottom of said chamber."

"16. A cover for a reservoir for writing fluid, comprising a plate provided with an opening therethrough, and a conduit fixed to said plate and surrounding such opening, said conduit being provided with means limiting the depth to which a pen-holder and pen may enter said conduit, whereby the pen point may be supported at a desired level

within the fluid in the reservoir supporting said cover."

Against the claims nine references were cited by the examiner as follows: Esser, 28,024, December 14, 1897; Hormann, 183,-853, October 31, 1876; Thomson, 430,446, June 17, 1890; Miller, 544,990, August 20, 1895; Stanek, 639,913, December 26, 1899; James, 1,218,663, March 13, 1917; Nilsson et al., 1,577,067, March 16, 1926; Yoshinaga, 1,608,970, November 30, 1926; Eickelberg, German, 296,306, April 29, 1916.

The Examiner rejected the claims upon "the grounds of aggregation, no patentable relation being seen between the ink well elements and the writing pen parts," and also on "the art of record." The Board denied the rejection on the ground of aggregation, but rejected them on Eickelberg, Thomson, and Nilsson, the here withdrawn claim 7 being rejected as too indefinite. We think the reversal of rejection on the ground of aggregation was correct.

Admittedly many, probably all, of the elements involved are old and appear in the references, and applicant's invention, if any, lies in the combination which he discloses.

For illustration, the patent to Eickelberg (which is a foreign patent) discloses a "reservoir adapted to receive writing fluid" with an "upwardly extending conduit in communication with its interior," a penholder "received within said conduit in a predetermined position," said holder having in it a pen "immersed in" the fluid of the reservoir.

These features being clearly disclosed by Eickelberg renders it a proper reference as to them, notwithstanding it is a foreign patent, to so use it is not contrary to the rule stated in Carson v. American Smelting & Refining Co. (C. C. A.) 4 F.(2d) 463, cited by appellant.

A foreign patent is a valid reference for all that is clearly disclosed therein. In re Crowell, 39 F.(2d) 681, 17 C. C. P. A. 1009.

Other features of the claims are that (a) the arrangement results in the pen "extending to substantially the bottom" of the reservoir or chamber; that (b) the reservoir is shallow, "having a depth approximating the exposed length of an ordinary pen and a maximum horizontal dimension of several times its depth"; (c) the sealing of the opening in the conduit by the engagement of the holder with the conduit wall; and (d) the means for drawing the ink "from the reservoir against the action of gravity, thus automatically filling the pen."

The Board found that features (a) and (c) were disclosed in Eickelberg. Relative to feature (a) appellant insists that a certain valve shown in the Eickelberg patent is disclosed as showing that "the pen at no time, regardless of the adjusted position of the tubular holder, can be normally held closely adjacent the bottom of the reservoir." This statement appears to be correct, but the mere positioning of the pen with relation to the bottom, standing alone, would probably be more a matter of skill than of invention. As for the sealing feature (c) there does appear to be a ledge feature in Eickelberg upon which the penholder rests, but this appears only from the drawing and is not described in the specification of Eickelberg for the function for which used by appellant. Furthermore, it seems obvious that when the holder is depressed in order to open the trap and lower the pen point into the ink an opening is produced which admits air. No sealing result was intended or claimed by patentee, and we do not think this feature is disclosed so as to make Eickelberg a valid reference against same.

Foreign patents may not be measured as anticipatory by what may be made out of them, but only by what is clearly and definitely expressed in them. In re Gillam, 37 F.(2d) 959, 17 C. C. P. A. 877.

Feature (b) relating to the dimensions of the reservoir would not of itself or by itself be patentable.

The Nilsson patent discloses "an ink well, receptacle, or container with means by which a fountain pen can be filled by limiting its entrance into the receptacle, or by limiting the depth to which the pen-point may be dipped into the fluid, or by limiting the descent of the holder into the well for the purpose of pumping the ink into the same. * * *"

The specification (the patent being for "ink receptacles for filling fountain pens") makes no specific reference to the filling of pens other than by "pumping." It is argued, however, in the brief of the Solicitor for the Patent Office that all that is required to meet feature (d), supra, is "that the pen be one of the type having a capillary tube, as an ordinary fountain pen. * * *"

The vent of claim 14 seems to be anticipated by both Nilsson and Thomson.

The Thomson patent, it may be here said, is entitled "Adjustable pen-rest for ink stands."

Claim 5 includes a limitation to a penholder having a capillary passage therein in

communication with the pen. This capillary passage enables an increase in the amount of ink that may be supplied the pen point and eliminates the necessity of frequent dipping of the pen into the reservoir.

This element of itself is probably anticipated by Nilsson.

It is thus seen that, upon dissecting the claims, elements substantially corresponding to most of their features are found in the prior art cited, one or more elements in one reference, another in another reference, etc., but no one reference contains all the elements, or their equivalents, and, even when several of them are found in combination, as in the Eickelberg patent, they are not found in a relation which produces some of the substantial functions of appellant's device taken as a whole.

We think appellant has fairly stated the case in the following paragraph of his brief:

"It is admitted that appellant is not the first to provide an ink well adapted to receive a pen when not in use, nor is he the first to provide an ink well having means to position the pen at a given height in the well when not in use. It is submitted, however, that he is the first to provide a main reservoir having an opening which cooperates with a pen; first, to seal the well when not in use; second, to position the pen at a given height in the reservoir and in a position to maintain the pen immersed in the liquid; and, third, to maintain the pen in the liquid to permit of the automatic loading of a substantial quantity into the pen by means of the peculiar construction of the latter."

By the combination thus described in the foregoing quotation, we think appellant has produced an article which is new and useful, differing in its character from that of any of the references, and that the particular elements recited in the quotation, when combined as described, perform functions which differ from the functions performed by them where found in the patents cited. The combination was not obvious to one skilled in the art, and, in our opinion, involves invention. Certain of appellant's claims are, therefore, allowable. Decisions of this court applicable here are: In re Champeau, 34 F.(2d) 1012, 17 C. C. P. A. 568; In re Hamachek, 36 F.(2d) 119, 17 C. C. P. A. 633; In re Baker, 36 F.(2d) 138, 17 C. C. P. A. 681.

Language is found in a decision of the Commissioner of Patents in Ex parte McCullum, 1914 C. D. 70, which seems to be quite apropos:

"In determining the patentability of a claim over features found only in a plurality of references it is necessary to consider the structural differences specified in the claims, as well as their functional difference or result. If the structures of the several references cannot be combined without the exercise of invention, even though the result is old, the claims should be allowed. If the structures of the references may be combined or substituted one for the other and the combined function or result is new, the claim should be allowed. It is only when both the structural features found in the references may be combined without invention to meet the structure called for by the claim and the function or result involves no invention that the claim should be rejected."

As already indicated, we think there were entirely too many claims drawn for this application. The allowance of numbers 4, 5, 13, 14, and 16 will embrace all that seems to be necessary to give applicant the protection to which we deem him entitled.

The decision of the Board of Appeals is reversed as to claims 4, 5, 13, 14, and 16.

As to the others it is affirmed.