### In re BUTTOLPH.

Patent Appeal No. 3116.

Court of Customs and Patent Appeals.
Dec. 24, 1934.

Frederick Transom, of Washington, D. C. (Thos. H. Brown, of Hoboken, N. J., and Lee B. Kemon and Raphael Tourover, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, which affirmed the action of the examiner in his rejection of claims 4, 5, 6, 10, 12, 13, 15, 21, 22, 23, 24, 25, 28, 29, 30, and 31 of appellant's application for patent for an alleged invention relating to vapor arc lamps. Claims 11, 26, and 27, rejected by the examiner, were allowed by the board. Other claims were allowed by the examiner.

Claims 22, 23, and 24 were copied into appellant's application from a patent to Hertz, No. 1,726,107 of August 27, 1929, for the purpose of interference, which claims read as follows:

"22. A discharge tube for positive column light, the gaseous filling of which comprises argon and mercury vapor.

"23. A discharge tube for positive column light, the gaseous filling of which consists of argon, krypton, xenon and mercury vapor.

"24. A discharge tube for positive column light, the gaseous filling of which consists of argon having a pressure above 4 millimeters of mercury pressure and of mercury vapor."

These claims were rejected by both tribunals below as unpatentable to the applicant for want of disclosure in applicant's application as filed. Since the chief contention in this appeal involves the correctness of the board's ruling as to these three claims, we will consider them at this point without any reference to any of the other claims in the application which are hereinafter discussed.

It will be noticed that each of the three claims calls for a discharge tube for *positive column light*. The first two claims differ slightly in the gaseous filling in the tube. Claim 24 calls for "argon having a pressure above 4 millimeters of mercury pressure and of mercury vapor."

The examiner and the board both held that appellant did not disclose a positive column light and that the application as originally filed made no mention of pressure.

Appellant contends here that the phrase "positive column light" is introductory and that the positive column light characteristic is inherent in the kind of tube he disclosed in his application, and that he was not required to disclose matters which were within the knowledge of those skilled in the art in order that he be entitled to make a claim, for interference purposes, containing such an introductory phrase. Appellant submitted several affidavits by different scientific men skilled in the particular art involved, in an effort to show that a positive column light was inherent in appellant's structure.

The examiner discussed the "positive column light" phase of the case at great length, but the substance of his holding is to the effect that claims 22, 23, and 24 were new matter over applicant's specification, since he did not disclose in his specification that the gas pressure, the current, the length of the discharge tube, and the shape of the discharge tube are selected so as to produce positive column light. The examiner conceded that applicant's device may have a luminous column and not have a positive column, since the light may be due to a negative glow. The examiner said:

" * * * It does not necessarily follow from what applicant has disclosed that applicant's device is a positive column device. As pointed out in the decision of Steenstrup v. Morton, 382 O. G. 571, 'when an applicant attempts to copy claims from an existing patent, it is incumbent upon him to show clearly in his specification and structure, the means for accomplishing the object called for in the claims.' It is not believed that the claims should be broadened in scope in view of the broadening of the definition of the term positive column by subsequent developments in the art. It has not been clearly shown by reference to a publication or a patent which has a published date prior to the filing date of the Hertz patent, from which claims 22 to 24 were copied, that has an arc discharge having a positive column, except by the patent to

Hewitt, 1,156,227, which is not very clear or authoritative. At the time the patent to Hertz was pending as an application, the expression 'positive column lamp' was used to mean a 'glow discharge lamp having a positive column.'

"If the claims are to be given the broad meaning which applicant has assigned to them, they are considered to be unpatentable over the disclosure of the patent to Hewitt 814,695 or the Austrian patent 40,817."

What appellant did disclose is, we think, concisely set out by the examiner in his decision: "The applicant discloses an electric arc lamp and a circuit for supplying electrical energy to the lamp. The lamp comprises a tube of vitreous material having filaments sealed into the ends thereof. A material giving off electrons, as calcium, may either be mounted on one of the filament supports or on a short pedestal near the filament. A globule of mercury or similar vaporizable material, as cadmium or lithium iodid, is placed in the envelope near one of the electrodes and is vaporized by the heat of the electrode thereby furnishing a vapor atmosphere for the lamp. Other gases such as hydrogen, helium, neon, argon, krypton, xenon, oxygen, or vaporizable materials as cadmium, zinc, sodium, potassium, lithium, caesium, and iodine or a mixture of any two or more of them, may be used in the envelope to furnish the atmosphere for the lamp. The filamentary electrodes are made of tungsten, carbon, tantalum, osmium alone, or with conductors of the second class. The circuit for the lamp comprises a source of alternating current connected to the primary of a transformer through [a] switch and to the electrodes by means of leads. The transformer secondaries are connected to the filaments so that when current is induced in each secondary, current will flow through the filaments. A solenoid is connected in the main supply circuit and in operable relation to [the] switch. In the lamp starting position the switch is in the closed position to allow the transformer to be energized. The transformer being energized, current flows from the secondaries to the filament electrodes, respectively, thereby instituting electron flow from the filaments through the discharge space and initiating a path for the flow of the main supply current through the lamp. Upon the flow of the main current through the lamp, the solenoid is actuated and opens [the] switch and holds it open, thereby de-energizing the secondary of the transformer. The filaments consequently are no longer heated by the passage of current through them, but are maintained at an electron emitting temperature by the heat generated in them due to the discharge in the lamp. [Reference to figures of drawings deleted.]"

In defining a positive column light, the examiner said: "* * * The positive column is defined as the space between the Faraday dark space and the anode of the discharge device in those discharge devices wherein the various spaces are distinguishable. * * * Positive column lamps are commonly considered to be glow discharge lamps, and applicant has not shown that all arc lamps which have a luminous column have a positive column."

The Board of Appeals, in affirming the examiner in rejecting said claims 22, 23, and 24, points out that the Hertz patent refers specifically to a discharge tube for positive column light, and in concluding that there was a lack of disclosure of this feature in applicant's application, the board said: "* * * The original specification is wholly silent on the matter. There is nothing said about gas pressures in the specification or current densities used for the discharge. The tube shown is long and this favors the supposition that positive column light may be inherent. After examining the authorities cited, however, we are not satisfied that positive column light is inherent in appellant's disclosure. During the prosecution of the case, and in certain affidavits filed both during the prosecution and with the appeal, an attempt has been made to show that appellant's improvement relates to lamps which in general have the positive column characteristic. It is of course immaterial, if the disclosure as originally presented does not inherently involve positive column light, that this is the type of light appellant may have intended to produce. Evidence wholly extraneous to the application cannot be relied upon to show this fact. Such, in effect, is the nature of the evidence presented by the affidavits."

We agree with the board and the examiner that the term "for positive column light" is a limitation in said claims not disclosed in appellant's application as filed. In the case of Braren v. Horner, 47 F.(2d) 358, 364, 18 C. C. P. A. (Patents) 971, this court passed upon the question as to whether or not the term "in an engraving machine and the like" was only introductory or was to be considered a limitation in the claims. After discussing the authorities, we said: "These cases, we are of opinion, are in point here and are sufficient authority, in view of the facts disclosed by

this record, to justify the conclusion that the words, 'in an engraving machine and the like,' as used in the counts in issue here, are introductory only, and should not be considered as limitations of the subject matter of the issue. It is true, as stated by the examiner of interferences, that in some cases courts have held that similar introductory words should be considered as limitations. *However, we think it may be safely said that in all such cases an examination of the facts disclosed by the record will show that the words thus considered as limitations were an essential element in the novelty of the device and of the invention in issue there.* No such contention is properly made here, as it is obvious that if there be invention, it is not in the construction of an engraving or similar machine, but in the drive by which such machine is operated." (Italics not quoted.)

In the instant case, it seems not to be disputed that the novelty relied upon by appellant and by Hertz is in the use of said gases in a *positive column light.* As is pointed out above, the examiner held that if the claims were construed as is contended for by appellant, that is to say, that if the positive column light is not to be regarded as a limitation on the claims, the claims would read on the prior art, and the patent to Hertz would be invalid. Hertz discloses and claims a construction which involves the use of a gas or gases and pressure which makes a positive column light. If the teachings of Hertz are followed, a positive column light must result. We do not think this is true in the teachings of appellant. As was suggested in Braren v. Horner, supra, we think the phrase "for positive column light" is "an essential element in the novelty of the device."

The effect of our holding in Braren v. Horner, supra, was discussed by this court in Hall v. Shimadzu, 59 F.(2d) 225, 226, 19 C. C. P. A. (Patents) 1288. Certain counts contained the phrase "a process of manufacturing a fine powder of lead suboxide intermingled with powder of metallic lead." Concerning the same, the court said: "With reference to the counts here in issue, we think that the phrase here under consideration is more than merely an introductory phrase, and is absolutely essential to point out the invention that is here involved."

Whether the phrase "for positive column light" may be relied upon to lend patentability to the claims of the Hertz patent is not a matter for our consideration here. It is a limitation in the claim, is obviously relied upon for novelty, and we think that the Patent Office tribunals were correct in holding that appellant could make the claims involved only by showing that he disclosed this limitation in his application, and were correct in rejecting such claims when presented in appellant's application.

Appellant in his brief here has not discussed the particular features of claims 4, 5, 6, 10, 12, 13, 15, 21, 25, 28, 29, 30, and 31, which were held to present no inventive novelty over the prior art cited. The references referred to in appellant's brief are discussed with a view of showing their bearing on the action of the board in rejecting said claims 22, 23, and 24. Appellant, however, has assigned the following errors Nos. 3 and 4:

"3. In rejecting certain other of the claims as not sufficiently distinguishing over certain cited references.

"4. In not allowing all the claims in substance as presented."

Under the circumstances of this case, we think the above assignments of error do not require our consideration of the correctness of the action of the Board of Appeals in affirming the examiner in his rejection of said claims. We think that our ruling in this particular is justified in view of the fact that appellant has not briefed nor discussed the references nor pointed out the particulars in which he regards the references as not being anticipatory of the claims.

No error on the part of the board in its decision appealed from having been pointed out, its decision should be and is affirmed.

Affirmed.