22 C. C. P. A. (Patents)

## In re McCURDY.

### Patent Appeal No. 3078.

Court of Customs and Patent Appeals.
April 15, 1935.

Sheldon H. Graves, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from a decision of the Board of Appeals of the United States Patent Office, which affirmed the action of the Examiner in refusing to allow claims 4, 5, 6, 11, and 12 of an application which relates to means and method for transmitting power over an extending transmission line. Claims 5 and 6 are regarded as illustrative and follow:

"5. The method of transmitting power over an extending transmission line, which method consists in causing a lagging voltage drop across an impedance in series with the line, causing lagging current to flow through an admittance in shunt to the line and maintaining said voltage drop and shunt current of such value and phase, throughout changes in load, that the line voltage and current at one part of the line are substantially in phase respectively with the line voltage and current at a distant part of the line.

"6. As a means for maintaining the voltage and current at one end of an extended transmission line in phase respectively with the voltage and current at the opposite end of the line, correcting apparatus connected to the line, said apparatus comprising a condenser in series with the line and an inductance in shunt to the line."

The references in the record are as follows: Steinmetz, 513,370, January 23, 1894; Bradley, 589,556, September 7, 1897; Le Blanc, 874,411, December 24, 1907; Swiss patent, 82,852, March 1, 1920.

The Board did not make application of the references in the same manner as did the Examiner, which fact will be discussed more in detail hereinafter.

The alleged invention at bar relates to the electrical transmission art and particularly to an apparatus which is designed to improve the transmission and load capacity of a transmission line and to stabilize the line under varying conditions of power demand. It is intended to take care of sudden increases in the load which often cause machines operated electrically to fall out of synchronization and stop. Applicant proposes to remedy the difficulties experienced in the prior art, such as are above referred to, by connecting to the line electrical corrective means, which has the effect of causing voltages at opposite ends of the line to be in phase with one another and to maintain the current at opposite ends of the line in phase with one another within desired limits and throughout changes in load. In

this court, appellant refers to his alleged invention in the following language:

"Present methods in practical use for improving the load carrying capacity of the line have been by means of synchronous machines connected to the line, the effect of which has been to cause the voltages at opposite ends of the line to be of equal value regardless of the phase shift between the opposite ends. In fact the use of such condensers has accentuated the normal shift of phase with the resulting disadvantages above noted.

"By employing stationary apparatus, applicant secures an additional advantage over existing types of corrective apparatus as the latter not only involve moving parts but to function properly require regulation with changes of load.

"Applicant's corrective apparatus not only has the effect of producing the desired counter-shift of voltage and current but in its preferred form, this apparatus is constructed to have an impedance equal to the characteristic impedance of the transmission line that is, the impedance of the corrective apparatus is substantially equal to the impedance which the transmission line would have were it of infinite length. * * *"

The Examiner rejected claims 1, 2, 3, and 9 on the ground that it would require nothing more than the skill of the electrical engineer to do what the applicant has done, in view of the prior art. As to these claims, the Board of Appeals reversed the Examiner and used the following language: " * * * We consider however that there are advantages in the arrangement set forth in claims 1, 2, 3, and 9 which are not to be found in the power transmission lines disclosed and the artificial lines described in connection with them in any of the references. It may be possible that with the references placed before a capable engineer familiar with the calculations of the electrical characteristics of power transmission lines, he might, if he were told what result the applicant desired, produce an artificial line of the character claimed. No one however seems to have succeeded in doing this notwithstanding the obvious advantage of automatic regulation with varying load on a power transmission line of this type. We think these four claims allowable."

While these claims are not before us on appeal, we think the issues raised by the claims which are on appeal will be somewhat simplified by a consideration of the

Board's position with reference to said allowed claims.

The Examiner rejected claims 4 and 5, being the only method claims in the application, on the grounds, first, because they were not proper method claims, but "are merely descriptive of the behavior and functioning of a line having the characteristics which the applicant's has"; second, for the reason that the claims "are anticipated by the behavior and functioning of the completely neutralized line which Bradley, of record, discloses."

As to claims 4 and 5, the Board, in affirming the Examiner's rejection, makes no mention of the prior art, but expressly affirms the Examiner in his first ground of rejection.

As to claims 6, 11, and 12, which were rejected by the Examiner for the same reasons as were claims 1, 2, 3, and 9, the Board said: "Claims 6, 11, and 12 are considered too broad to be allowed over Le Blanc. Substantially all claim 6 recites is a condenser in series and an inductance in shunt to a transmission line. Claims 11 and 12 recite little more than claim 6 save that there is a proportioning of the inductance and capacitance. Le Blanc explains these matters at considerable length and in the absence of anything more definite as to the results accomplished by this arrangement, we deem these claims properly denied by the examiner."

We will first consider the question raised with reference to the rejection of claims 4 and 5 upon the ground that they are not proper method claims. Appellant has argued at great length that these claims should be allowed for the reason that the methods set forth are not *"merely* functions of the apparatus disclosed" (italics ours), although he concedes that they are the functions of such apparatus. He contends that the method which the claims call for can be performed by apparatus of other kinds and by hand. He mentions, as an example of other apparatus which could be used, a synchronous condenser or condensers which could be substituted for both of the stationary condensers involved in his disclosure. He then states that the use of such a condenser would necessitate providing a means for regulating the same, and that this might be operated by hand; that a rotary machine might be substituted for the applicant's shunt inductance, which machine would, if used to carry out the applicant's method, require periodic adjustment. Applicant con-

cedes that he has made no showing here or before the Board which illustrates any hand control method of producing the desired phase shift or as showing how a synchronous condenser might be used, but states that these matters are obvious from the statements in applicant's specification.

It will be noticed that neither the Board nor the Examiner discussed this phase of the grounds of rejection of claims 4 and 5 at any great length. The Solicitor for the Patent Office, in this court, however, replies to appellant's suggestion that a synchronous condenser might be substituted for the stationary condenser in the following language:

"* * * Such may be true enough, but obviously any species of condenser is still a condenser, and generically functions as a condenser. * * *

"Appellant's illustration of a synchronous condenser which has a hand control does not, however, bring his process within the class of methods carried out by hand. Although many things can be done by hand, the first step of claim 4, for example, 'causing a voltage drop through an impedance,' is something which can not be done by hand. It is merely the inherent operation and result of the electric current and the impedance, or the apparatus used. Appellant's example of the hand control is something which can not be done by hand. It is adjusting the apparatus which in its inherent operation carries out the alleged process. A process which is only the function of a machine or apparatus is not an invention, but, at most, the result of one. In re Watson [44 F. (2d) 868], 18 C. C. P. A. (Patents) 712, 1931 C. D. 15; In re Weeks [48 F. (2d) 662], 18 C. C. P. A. (Patents) 1234, 1931 C. D. 465. * * *"

We think it is well settled that the inventor of an apparatus may be allowed method claims if the method performed by the apparatus may be performed by other apparatus or by hand. The mere fact that he has invented a machine for carrying out his process does not make him any the less an inventor of the process, provided the machine and process both are new and useful and otherwise meet the requirements of the statute (35 USCA § 31). Bell, the inventor of the telephone, discovered that by gradually changing the intensity of a continuous electrical current so as to make it correspond exactly to the changes in the density of the air, caused by the sound of the voice, speech could be reproduced and understood,

and he devised an instrument for doing it. He was the discoverer of the underlying principle which his machine or device made serviceable to humanity. He was the inventor of a method and also of a mechanism for performing the method. See Dolbear v. American Bell Tel. Co., (The Telephone Cases), 126 U. S. 1, at pages 532, 533, 8 S. Ct. 778, 31 L. Ed. 863.

This whole subject-matter has been considered on several occasions by this court. In Re Watson, 44 F.(2d) 868, 18 C. C. P. A. (Patents) 712, and in Re Weeks, 48 F.(2d) 662, 18 C. C. P. A. (Patents) 1234, it was held that the methods claimed in those cases amounted to nothing more than the functions of the machines involved. In Re Ernst et al., 71 F.(2d) 169, 171, 21 C. C. P. A. (Patents) 1235, the whole subject was again discussed and the various authorities reviewed, and this court said:

" * * * It appears that appellants' process is absolutely dependent upon a machine, or machines, for which appellants have been allowed apparatus claims, and each of the method claims here involved states a function, and nothing more than a function, of the apparatus described in the allowed claims. Nowhere in appellants' specification is it pointed out how their process could be carried out except by means of apparatus for which they have been allowed claims, and we agree with the decision of the Board of Appeals wherein it is stated that ' * * * it is not apparent how the alleged method could be performed independently of this specific apparatus or one having exactly equivalent corresponding elements.' * * *

"It seems to us that appellants' so-called process is inseparably connected with the apparatus described by them, and for which they have been allowed claims. Their invention was not complete without apparatus with which to apply the process, and as the apparatus itself was inventive, and no other means are shown for applying the process, we do not see how it could be said that the process claims and the apparatus claims are both allowable."

■ It has not been made clear to us that the steps of the method claims 4 and 5 at bar are not merely the functions of the particular apparatus disclosed, or that these steps might be performed by any other kind of apparatus or by hand. Under these circumstances, we think that the principles laid down in the above-cited cases are controlling here, and we agree with the Board and the Examiner in their rejection of claims 4 and 5 for the reasons stated, and it will not be necessary for us to consider the prior art rejection of these claims on the part of the Examiner.

■ As to claims 6, 11, and 12, it will be noticed that the Board did not discuss all the references referred to by the Examiner, but stated that the claims were too broad to be allowed over Le Blanc. As to these, and other claims rejected upon the same ground which are not before us, the Examiner was of the opinion (and this view was not disapproved by the Board) that applicant's insertion of "artificial lines" into the transmission line in the manner described in the claims would be obvious to any skilled electrical engineer when told what results were desired.

We are constrained to agree with the Board that, in view of the teachings of Le Blanc, there would be nothing inventive in constructing a device such as is defined by claims 6, 11, and 12.

The Le Blanc patent relates to a system of electrical transmission and propulsion in which he teaches the proportioning of the inductance and capacitance, and goes into this subject at great length. We find the following in the Le Blanc specification: " * * * I have, therefore, in Fig. 3 shown a series of condensers in shunt across the outgoing and return conductor at points along the line, the consecutive distances between which are short with respect to a half wave length and, in this way, I have increased the capacity C of the line which means that I have decreased the ratio of the self induction to the capacity. This results in diminishing the voltage along the line. In Fig. 4, on the other hand, I have shown condensers in series in the outgoing line by which means I have, in effect, reduced the apparent self induction 1 of the line. This means that I have again decreased the ratio of the self induction to the capacity of the line and with it the voltage which the line is compelled to support. * * * "

The Solicitor for the Patent Office in this court has said, in substance, that, in view of the fact that Le Blanc had explained, at great length, the subject of proportioning of inductance and capacitance, there would be nothing inventive in picking out particular values or adjustments of constants. We agree with this contention.

The subject-matter of appellant's application involves highly technical electrical matters. Both tribunals of the Patent Office

404

concur in holding that what appellant has done, as defined in the rejected claims, would be obvious to the skilled electrical engineer, and it has not been made clear to us that the tribunals were in error in this particular.

The decision of the Board of Appeals is affirmed.

Affirmed.