25 C.C.P.A. (Patents)

In re WADMAN.
Patent Appeal No. 3872.

Court of Customs and Patent Appeals.
Feb. 28, 1938.

R. D. Brown and S. F. Parham, both of Hartford, Conn. (V. M. Dorsey, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C., (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming in all but two claims the decision of the Examiner which rejected claims 1 to 20, 22, 28 to 33, and 36. Claims 17 and 19 were allowed by the Board. Ten apparatus claims including 17 and 19, have been allowed.

During the oral argument here, appellant moved to dismiss the appeal with respect to claims 1 to 5, inclusive, 11, 13, 14, 15, 29, 30, 31, and 33, which motion will be granted.

Of the claims remaining for consideration, claims 7, 16, and 36 are illustrative, and read as follows:

"7. The method of forming a succession of hollow glass articles in a forming unit comprising a blank mold and a final blow mold cooperating solely with each other, which comprises successively and sequentially supplying a series of charges of plastic glass to the blank mold at the ends of uniform time intervals, successively and sequentially forming all the charges in the blank mold into parisons in uniform periods of time, supporting all the parisons so formed out of contact and out of registry with either the blank mold or the blow mold for reheating, successively and sequentially blowing all the reheated parisons to final form in the blow mold in uniform periods of time, and so timing the various operations of the forming unit in the forming of a series of articles that at one time during each cycle of operation of the blank mold at least three charges of glass will be in the process of formation into glass articles, one having been supplied to the blank mold and being enclosed thereby, a second, which was previously formed into a parison in said blank mold reheating as aforesaid, and a third which was still earlier formed into

a parison in said blank mold being enclosed within said final blow mold."

"16. Apparatus for forming hollow glass articles, comprising a blank mold adapted to be supplied with charges of plastic glass, a blow mold, means for forming a charge of glass supplied to said blank mold into a parison therein, means for removing a parison so formed from the blank mold and for suspending it for reheating out of contact and out of registry with any body mold surface and thereafter for moving the reheated parison to a position to be enclosed by the blow mold, means for blowing a reheated parison to final form in the blow mold, and means for timing the operations of all the aforesaid means in such manner that there is a time during each cycle of machine operation in which at least three charges of glass, all of which were supplied to said blank mold, are in the process of formation."

"36. The method of forming a succession of hollow glass articles, which comprises supplying a series of charges of plastic glass to a blank mold which is in neck-down position, successively forming the charges in the blank mold into parisons, inverting the parisons so formed by the application of forces thereto to invert the parison while maintaining the center of inversion always between two planes both perpendicular to the longitudinal axis of the parison and passing respectively through the opposite ends thereof and thus bringing the parison to a neck-up position, supporting the parisons so formed out of contact and out of registry with any body mold surface for reheating, transferring the parisons to a final blow mold, blowing the reheated parisons to final form therein, and so timing the various operations on a series of charges of glass that at one time at least three charges of glass will be in the process of formation into glass articles: one having been supplied to the blank mold and being enclosed thereby, a second, which was previously formed into a parison in said blank mold, reheating as aforesaid, and a third, which was still earlier formed into a parison in said blank mold, being enclosed within a final blow mold."

The claimed invention relates to a method and apparatus for forming glassware. It is described in the Examiner's statement, omitting the numerals, as follows:

"The claimed invention relates to a method and apparatus for forming glassware. The apparatus comprises a base up-on which is mounted a casting. The casting supports a blank mold and a blow mold. Each of these molds is made in two sections and means including pneumatic motors are provided for opening and closing these molds. Located centrally between these molds is a means for supporting two neck molds. These neck molds are supported and operated in the same manner, and each one at times cooperates with the blank mold to aid in the formation of the parison after which this neck mold is moved to a dwell position wherein the parison formed in the blank mold is permitted to reheat and air is blown into the parison, after which this neck mold is again moved in the same direction and transfers the parison to the blow mold where it is blown to final form. This neck mold is then returned for cooperation with the blank mold. The parison is formed in the blank mold in inverted or neck down position and during the movement of the parison from the blank mold to the dwell position. it is reverted to the neck up position. Both neck molds operate in the same manner and the operations of the machine are so timed that when one neck mold cooperates with the blank mold the other neck mold is at the dwell position with the parison previously formed in the blank mold while the blow mold holds the parison formed previous to the two mentioned above. This appellant designates as the 'triple overlapping cycle.' That is, three parisons are in the various stages of formation into a finished bottle on the machine at the same time, one being formed in the parison mold, another being at the dwell position where it is reheating and is being expanded and a third being in the blow mold where it is being shaped to final shape.

"In order to accomplish the transfer of the parisons from the blank mold to the blow mold in the manner stated without interference, the two neck molds move along different paths and they are for this purpose mounted upon an oscillating support. The support is oscillated by means of air motor connected thereto by means of arm and a shaft depending from the support. The machine is also provided with the usual elements which cooperate with the molds in the formation of a bottle. These, for example, are the neck pin, settle blow head cooperating with the blank mold, blow head cooperating with the blow mold and the means for moving the neck molds to their various positions comprising motor operated rack bars. Means are also provided for opening and closing the neck molds at the

proper time. A blowing means is provided at each of the separate dwell positions of the two neck molds to expand the parison while reheating. The various elements are caused to operate at the proper time by the timing means."

The references cited are: Wilzin, 1,-297,981, March 18, 1919; Stuckey, 1,506,-687, August 26, 1924; Canfield, 1,609,691, December 7, 1926; Ingle, 1,843,160, February 2, 1932; Ingle, 1,911,119, May 23, 1933; Peiler et al., 1,944,844, January 23, 1934; Rowe, 1,945,983, February 6, 1934.

The machine disclosed in the instant application purports to be an improvement on the machines disclosed in the Ingle patents, supra, the difference between the machine of the appellant and those of the reference patents being well stated by the Examiner as being "that the machine of the patent is provided only with a single neck mold for each blank mold and blow mold and the parison is transferred from the blank mold directly to the blow mold without an intermediate dwell and the reheating of the parison takes place mainly while it is in the blow mold though it may take place partly in the blank mold and partly in the blow mold."

All of the claims before us, with the exception of claim 36, were rejected on the prior art. The method claims on this appeal are 6 to 10, inclusive, 12 and 36, and the apparatus claims 16, 18, 20, 22, 28, and 32.

The Examiner and Board of Appeals both held that certain features of appellant's claims were not patentable over Stuckey, and that the reheating out of contact and out of registry with either the blank mold or the blow mold is disclosed in Canfield and Wilzin.

Method claims 6 to 10, and 12, and apparatus claims 16, 20, 28, and 32, were rejected on the patent to Stuckey in view of Wilzin and Canfield. These claims, with the exception of claim 20, were also rejected on Canfield alone.

The device in the Stuckey patent discloses a three-mold machine, a stationary blank mold, an intermediate blank finishing mold, and a stationary blow mold. The intermediate mold, in which the blank may be partially blown, is about halfway in function between the blank mold and the blow mold. Neck rings are presented successively to the three molds. Thus it will be noted there would be in the Stuckey machine three articles at one time all in the course of formation, a blank in the blank mold, a previously formed blank in the intermediate mold, and another blank having been transferred from the intermediate mold being finished in the blow mold.

The Canfield patent provides for a rotating turret type of machine, on which are provided a single blank mold, six mechanisms, each including a spindle head to which the glass is attached through the formation of the articles, a neck mold, and a blow mold. The parison is made in the blank mold in co-operation with the neck mold. After having been removed from the blank mold, the parison is supported by the neck mold in open air out of contact with any body mold while it is reheated, and is then transferred to the blow mold where it is blown into final form. The Examiner held that this reheating is done out of contact and out of registry, while the Board observed in its first decision that the reheating is out of contact but not strictly out of registry. In this machine, several glass articles, at least three, are in process of formation at one time.

The Wilzin patent provides for a two-mold glass-making machine with a single neck ring reciprocating with the blank mold and the blow mold. After the parison has been formed in the blank mold, it is transferred to the blow mold suspended from the neck ring, and while between the molds it is allowed to reheat and elongate free from contact with any body mold. Wilzin apparently has but one article in course of formation at any one time.

Appellant, in his brief, states that illustrative claim 16 expresses the apparatus claims most broadly, as requiring:

"(1) A blank mold,

"(2) A blow mold,

"(3) Means for forming the charge into a parison in the blank mold,

"(4) Means for removing a parison formed in the blank mold and for suspending it for reheating out of contact and out of registry with any body mold surface, and thereafter for moving the reheated parison to a position to be enclosed in the blow mold.

"(5) Means for blowing the reheated parison to final form.

"(6) And timing means for timing the operations 'in such manner that there is a time during each cycle of machine opera-

tion in which at least three charges of glass, all of which are supplied to said blank mold, are in process of formation.' "

On the oral argument, counsel for appellant admitted that (1), (2), (3), and (5) are not novel. With respect to (4), the patents of Wilzin and Canfield clearly disclose suspension and reheating out of contact with any body mold. The timing means as set forth in (6), by which at least three charges of glass are in process of formation, is likewise clear in Stuckey and Canfield.

As we understand it, in all glass blowing machines, in which there are several successive stages of formation, the synchronizing of the different operations must be governed by timing means.

While Stuckey did not anticipate the part of the claim "out of contact and out of registry with any body mold," the Board held that the Examiner correctly contended that, since this feature is known in the art in generally similar relation, invention is not involved in utilizing it in Stuckey's machine. The Examiner reasoned that "there would be no invention in dispensing with the mold 15b [the intermediate mold] of Stuckey especially in view of the teaching of either Wilzin or Canfield. As shown in Figs. 9 and 10 of Wilzin, the parison formed in the blank mold 66 is supported by means of the neck mold 55 at a point intermediate the blank mold 66 and blow mold 72 out of contact and out of registry with any body mold where the parison is reheated and blown, after which the parison is transferred to the blow mold 72 where it is blown to final shape. The Canfield patent discloses a receiver or blank mold 87, a neck mold 222, and a plurality of blow molds 249. The parison is formed in the blank mold in cooperation with the neck mold. The parison is then removed from the blank mold and supported by the neck mold in open air out of contact and out of registry with any body mold and then the parison is transferred to the blow mold where it is blown to final shape. Appellant in one of his arguments states that a certain amount of heat must be extracted from the glass by the molds before the bottle is finished and that whereas Stuckey uses three molds to extract this amount of heat, he will have difficulty in extracting a sufficient amount of heat from the molten glass if the intermediate mold 15b were dispensed with. However, making a bottle by the use of only two molds is the common method used in the art. More-

over, since neither Wilzin nor Canfield has, apparently, found any difficulty in extracting a sufficient amount of heat from the glass by the use of only two molds, it is not seen why Stuckey should have any difficulty in extracting a sufficient amount of heat from the glass if his intermediate mold were dispensed with and the parison reheated and blown in open air."

The Board of Appeals, in its final decision denying appellant's petition for reconsideration of the Board's former decision, set forth very clearly the meaning it attached to the phrase "out of registry": "The particular wording of the definition 'out of registry' in applicant's specification is noted but actually it seems that any difference in this respect is more a mere difference in words than in merits. As a function, if the blank is out of contact with the blank mold and other molds during reheating, it is effectively out of registry whether strictly out of position to be enclosed should such molds be closed. The essential feature is that it is exposed to the atmosphere or free from contact of good heat conductors. This is true in Canfield both as to the blank mold and the blow mold during reheating. As a single feature it is disclosed by Wilzin also."

■ This seems to us to be a reasonable and proper construction. We are of opinion that rejected claims 16, 28, and 32 fail to define invention over Stuckey taken with Canfield or Wilzin.

Apparatus claims 18 and 22 were likewise rejected by the Examiner on Stuckey in view of either Wilzin or Canfield. These claims recite that the settled charge of glass is counterblown to form a hollow parison while in the blank mold. This feature is not disclosed by Stuckey. The Examiner held, however, that since in the cycle of operating the machine of Stuckey there are three bottles in process of formation, the "cycle is not affected by the presence or absence of the step or means of counterblowing the parison while it is in the blank mold. Also the presence or absence of the step or means for counterblowing the parison has no affect upon the presence or absence of the intermediate mold 15b of Stuckey. Each functions independently of the other."

As a further reason for rejecting claims 18 and 22, the Peiler reference was cited by the Examiner and the Board. Figures 12 to 15 of the Peiler patent clearly show counterblowing of the charge in the blank mold. Surely it would require no exercise

of invention to provide controlled air passages through the neck mold and plunger of the Stuckey machine to accomplish the counterblowing of the parison while it is in the blank mold.

The Board of Appeals held these rejections to have been warranted and we are in accord with its decision.

Apparatus claim 20 was also rejected by the Examiner on Stuckey in view of either Wilzin or Canfield, but more particularly on the Rowe patent. This claim discloses a specific feature which consists of a plunger which enters the glass in the blank mold and forms a slight depression in the bottom of the glass. The Examiner held that the means for compacting glass in the blank mold is independent of the presence or absence of the intermediate mold 15b of Stuckey, and that, furthermore, the plunger type of compacting glass is not new and could without invention have replaced the compacting means of Stuckey without changing the cycle of his machine. An inspection of Figures 2 and 3 of the Rowe patent shows this clearly. Since it appears that no new or unobvious result is achieved, we must agree that the decision of the Board of Appeals affirming that of the Examiner is proper.

■ The Peiler and Rowe references do not require discussion by us, as the appellant did not brief or refer to them, and in no way pointed out in what way they should not be considered. In re Buttolph, 73 F.2d 936, 22 C.C.P.A., Patents, 802. Both of these references, however, appear to be so effective in the decisions of the Examiner and the Board that we deem them enlightening to this opinion.

■ From what has been hereinbefore stated, it is apparent that some features of appellant's claims are disclosed in the Stuckey patent, such as three articles all in course of formation at one time, and that other features, such as reheating out of contact with any body mold, are disclosed in Canfield and Wilzin. It seems clear to us that putting these features together and dispensing with the intermediate mold of Stuckey would be obvious to one skilled in the art.

We think the law cited by the Solicitor for the Patent Office, applicable to the matter before us of combining references, is appropriately expressed by this court in In re Cordes, 76 F.2d 302, 304, 22 C.C.P.A., Patents, 1158, as follows: "In passing upon the patentability of combination claims we have frequently combined references and held that, in view of such references, an alleged new combination would be obvious to one skilled in the art, and hence unpatentable." See, also, Mantle Lamp Company v. Aluminum Products Co., 301 U.S. 544, 57 S.Ct. 837, 81 L.Ed. 1277.

■ Appellant claims that a new and better result would be obtained by the device and method of the appealed claims, and that this result would be obtained by "new arrangement of parts and steps differing substantially from anything disclosed in any or all of the three patents employed in the proposed combinations."

Appellant may have a new and better machine, but that is not sufficient to attach patentability to his rejected claims. This is the settled law, as we held in Re Rauber, 76 F.2d 304, 306, 22 C.C.P.A., Patents, 1117, quoted in the brief of the solicitor, as follows: "The old elements which appellant has combined serve no different purpose than they did in the cited patents. The mere fact, if it be a fact, that appellant has a better boiler, does not necessarily imply invention. Mechanical skill alone may assemble or combine desirable features of the prior art and obtain better results than have ever been obtained, but the patent laws afford no reward for such an improvement."

Appellant contends that the rejection on the combination herein is contra to the opinion of this court in In re Wells, 53 F.2d 537, 539, 19 C.C.P.A., Patents, 707, 710. We do not agree with this contention. In the Wells Case, supra, the Patent Office read one reference upon the other so that, "if the Pyles ratchet clutch were fitted to the Kammerdiner device, and should then be run backwards, appellant's device was fully anticipated." There is no such farfetched building up in the instant matter. Here the reheating out of contact and registry is clearly disclosed by both Wilzin and Canfield, and, without changing the cycle or function of the Stuckey machine, it could be applied to Stuckey by dispensing with the intermediate mold and permitting the parison to reheat in the open. Moreover, here, as was held in the Wells Case, supra, appellant has a patentable invention, as is shown by the allowance of many apparatus claims which apparently embrace sufficient structure for obtaining the sought results.

We do not consider In re Dann, 47 F.2d 356, 358, 18 C.C.P.A., Patents, 1031, 1035, cited by appellant, applicable, for the reason

that, in our opinion, the combination of structural features herein may be made without invention "to meet the structure called for by the claim and the function or result involves no invention." Ex parte McCollum, 1914 C.D. 70, 204 O.G. 1346.

The method claims, with the exception of claim 36, were rejected by both tribunals of the Patent Office for the reason that the claims defined novel apparatus rather than new method, and, as such, failed to define invention over Stuckey taken with either Canfield or Wilzin, and also on Canfield alone.

Appellant urges that they "Recite the novel method of using a blank mold and a blow mold which cooperate solely with each other, simultaneously to form three articles. The method steps of these claims are specified as carried on by the aid of old tools (the cooperating molds) and the method is limited in this respect."

It is contended by appellant that the Board erred in disregarding the alleged limitation. It seems to us, from a careful examination of the method claims, that the Board properly disregarded the claimed limitation. The claims appear to be equivalents in substance to apparatus claims and could include a plurality of blow molds shown by Canfield. They disclose the expressions "with a final blow mold," "blowing all the heated parisons," "all the parisons," and "supporting the parisons." These expressions would seem to lead to the conclusion that the combination set forth in these rejected claims cannot be regarded as a limitation to one blank mold and one blow mold co-operating solely with each other. They set forth "a purely structural idea, and not a process idea." In re Fessenden, 45 App.D.C. 21.

Method claim 36 was rejected by the Examiner as being directed to the function of applicant's apparatus. In its first decision, the Board of Appeals overruled the Examiner's rejection of functionality and included this claim with claims 13 and 15 rejected on the prior art. In its second decision, on requested reconsideration, the Board affirmed the Examiner in rejecting claim 36 as functional.

Appellant urges that claim 36 sets forth a patentable method and that it is not functional. In support of his contention he quoted the rejection of the Examiner as follows: "Claim 36 was rejected as being directed to the function of the applicant's apparatus. The method recited in this claim requires a machine for its performance and no machine other than the one disclosed in this application is known which is capable of performing this process. The Examiner is unable to conceive of any other machine capable of performing this process."

Appellant then states that he "met this rejection by reference to six patents and patent applications, disclosing six substantially different machines, each capable of performing the method of claim 36." None of the said six patents and patent applications are in the record, and there is nothing concerning them here to inform us.

In the absence of information, we cannot judge if the so-called method in claim 36 can be performed by other and different apparatus. As to its being performed by hand, it is not good sense to consider it. As far as the record here is concerned, a careful study of the claim leads to but one conclusion—that the so-called method is inseparably connected with the apparatus and dependent on the apparatus. The claim sets forth nothing more than a function of the machine, as we view it.

Process or method claims which merely claim the function of the apparatus are not allowable. This has been held in a long line of decisions of this court. In re Watson, 44 F.2d 868, 18 C.C.P.A., Patents, 712; In re Weeks, 48 F.2d 662, 18 C.C.P.A., Patents, 1234; In re Heintz, 71 F.2d 172, 21 C.C.P.A., Patents, 1169; In re Ernst et al., 71 F.2d 169, 21 C.C.P.A., Patents, 1235; In re McCurdy, 76 F.2d 400, 22 C.C.P.A., Patents, 1140; In re Lindberg, 79 F.2d 903, 23 C.C.P.A., Patents, 794.

The motion to dismiss the appeals as to claims 1 to 5, inclusive, 11, 13, 14, 15, 29, 30, 31, and 33 is granted.

We conclude that the Patent Office tribunals did not err in rejecting the appealed claims here involved, and the decision of the Board of Appeals is affirmed.

Affirmed.