33 C.C.P.A.(Patents)

## In re SOLAKIAN et al.
## Patent Appeal No. 5132.

Court of Customs and Patent Appeals.
May 7, 1946.

Rockwell & Bartholow, of New Haven, Conn. (Henry E. Rockwell, of New Haven, Conn., and Edwin R. Hutchinson, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all of the claims, numbered 1, 7, 9, 10, 16 to 20, inclusive, and 22 to 24, inclusive, in appellants' application for a patent relating to Furnaces for Heat Treatment of Metal. Upon appeal to the Board of Appeals it reversed the action of the examiner as to claims 10, 17, 23 and 24, and affirmed the examiner's rejection as to the other claims.

From the decision of the board affirming that of the examiner as to said claims the appellants have here appealed. The claims involved are, therefore, claims 1, 7, 9, 16, 18, 19, 20 and 22.

Claims 9 and 22 seem to be representative of the appealed subject matter and read:

"9. A furnace for the heat treatment of metal, comprising a pot, a charge of

salts therein, means for fusing the salts and maintaining them in fused condition including a source of heating current and electrodes immersed in the salt bath, means for controlling the temperature of said fusing means including a lens and an open-ended ray-collecting tube associated therewith having its open end spaced upwardly from the surface of the salt bath, and means for supplying a downward current of air to the interior of said tube so as to cool the same and maintain a clear sighting space between the upper surface of the bath and the lens, said tube being in an intermediate position with respect to said electrodes."

"22. The method of treating high-speed steel for hardening which comprises immersing the steel articles in a bath of salts heated to a high temperature for fusing and fluid only at a high temperature, collecting heat rays emanating from the upper surface of the bath in a predetermined localized part thereof, and utilizing those rays to control the temperature of the bath."

It will be noted that claim 22 is a method claim and it is the only method claim in the case.

The references cited by the examiner (some of them are not discussed by the board, being regarded by it as cumulative) are as follows: Siefert et al. 1,782,482 November 25, 1930; Bellis 1,864,885 June 28, 1932; Larsen et al. 2,054,382 September 15, 1936; Adam, Jr. 2,145,677 January 31, 1939; Sordahl 2,184,169 December 19, 1939; Dike 2,232,594 February 18, 1941; Brooke 2,290,028 July 14, 1942; Titcomb 2,291,007 July 28, 1942; British Patent 510,060 July 26, 1939; Norwegian Patent 63,295 March 3, 1941.

We think the invention is well described in the examiner's decision and we quote therefrom as follows, omitting the references to numerals: "The alleged invention relates to an apparatus, and alleged method, for treating high speed steel for hardening in a fused salt bath furnace. The furnace is particularly characterized by having its electrodes immersed in the salt bath and provided with supporting shanks extended over the wall of the pot and the pot is square, the electrodes being arranged at the apices of a triangle, the middle electrode being located in one corner portion of the pot, and all three of the electrodes being on one side of a diagonal of the pot, to allow space to insert the work. On a bridge member, supported above the electrode shanks, is mounted a radiation pyrometer, provided with a tube and lense for collecting and concentrating heat rays from the upper surface of the bath upon the thermopile. The pyrometer controls the current supply to the electrodes, and hence the temperature of the bath, in a usual manner. It is claimed that by not immersing the pyrometer in the fused salt bath corrosion thereof is avoided, and that by placing the lense at some distance above the open tube end, which is adjustable with respect to the bath level, clouding of the lense by the fumes from the bath will be prevented."

In rejecting the claims the examiner said:

"Claim 22 is the only alleged 'method' claim now in the case, and it stands finally rejected as not defining the alleged invention. The step of 'utilizing' rays to control the temperature of the 'bath' is clearly no more than the function of a machine. See In re Ernst et al., 1934 C.D. 595. *It is not seen that there can be any novel method in the case, in view of the fact that pyrometric control of the temperature of a salt bath furnace is generally old, as is shown by Adam, Jr. and also by Titcomb.* [Italics ours.]

"Claims 1, 7, 9, 16 to 20, 23 and 24 stand finally rejected as based on the old and unpatentable combination of Adam, Jr., or Titcomb. There is no evidence that there is any cooperation between specific features of the electrode arrangement with respect to the furnace, and specific construction of the pyrometer and/or the support therefor. Each of these arrangements performs its function independently of the other. Both Adam, Jr., and Titcomb show that the combination of a pyrometric control and a sale bath furnace whose temperature is controlled thereby is old, and applicant indeed admits this state of the art in his specification.

"Claims 1, 7, 9 and 22 stand finally rejected as unpatentable over Adam, Jr. or Titcomb, in view of Larsen et al, Sordahl, or Dike * * *, which show that the radiation pyrometer as claimed by applicant is old, in every essential detail. The Larsen et al and Dike * * * arrangements are used to modify the temperature of bodies which they do not contact, and it is obvious that the Sordahl pyrometer may also be so used. This feature of applicant's alleged invention is therefore thought not to be novel, or to confer patentability on any claims wherein it is recited. It is not seen that it is patentably material what part of a furnace or charge is used to activate a controlling pyrometer for the furnace. Any skilled mechanic will obviously choose such a part as will produce the desired results, when used for this purpose.

"Claims 10 and 16 to 20 stand finally rejected as unpatentable over the art as applied to claim 1 in view of Bellis or Seifert et al, which show that it is old to arrange electrodes, whatever their number may be, at one side of a pot, in order to leave the remaining surface of the pot open and free, said pot, as shown in Bellis, may be the pot of a fused salt bath furnace. Attention is particularly directed to the statement in lines 71 to 75 of page 3 of Bellis that the single electrode * * * may be arranged adjacent to one side of the pot so that greater pot capacity is attained for receiving the metal objects to be treated. The Bellis patent shows also a like arrangement for two electrodes, and it is thought to be evident to any skilled mechanic that the same results as are obtained by Bellis with one or two electrodes may be obtained in the same way where three or any other number of electrodes is used. The British and the Norwegian patents show that the use of three electrodes is old, and also show a rectangular pot as claimed. Seibert also shows a rectangular pot, so this feature also is not thought to be patently material. Claims 23 and 24 stand finally rejected on the art as above applied to claim 10. These claims being essentially of the type which are condemned in ex parte Fine, 1927 C.D. 84, it is held that the additional details of construction which are recited therein are mere matters of aggregation, and are, moreover, well within the range of mechanical skill."

It will be noticed that in rejecting the method claim, 22, the examiner held, first, that it did not define the alleged invention, and, second, that the steps defined nothing more than the function of the machine. He further stated that, "It is not seen that there can be any novel method in the case, in view of the fact that pyrometric control of the temperature of a salt bath furnace is generally old, as is shown by Adam, Jr. and also by Titcomb."

Whether the board meant to affirm the examiner's rejection of the claim on the prior art is subject to considerable doubt, although it did not specifically reverse the examiner's decision in this regard. As to claim 22 the board stated: "Claim 22 is directed to an alleged method of treating high speed steel but the real subject matter in issue is a radiation pyrometer tube."

Later it said: " * * * We are unable to see wherein this claim [22] defines any step that can be regarded as a true process step. The tube apparently functions exactly the same as those shown in the prior art. At best it merely sets forth the function of a specific apparatus and that is not regarded as a true process."

We have considered very carefully the rejection by the examiner and by the board of the claims on appeal and we are in entire agreement with the conclusion reached by the board as to their lack of patentability. We conclude that what appellants have done, in view of the prior art, as has been pointed out by both tribunals below, does not rise to the level of invention.

Appellants may have an improved device over those disclosed in the prior art, but it seems to us that they have done nothing more than to merely consolidate the desirable features of the cited prior art in such a manner that there is no new coaction between the elements and no new and unexpected result flowing from the device except that which could be expected from a mere consolidation of the old elements.

As to claim 22, we find ourselves in rather an unusual position. The above-quoted statement by the board indicates.

that if a method claim sets forth the function of a machine it is not a true process claim. This is not the first time we have had this question before us and it has been uniformly held that the mere fact that a machine is found that will perform the method is no justification for the disallowance of the method claim if it defines a novel and useful method.

This position is supported clearly by the decision in the case of Waxham v. Smith et al., 294 U.S. 20, 55 S.Ct. 277, 278, 79 L. Ed. 733, where the Supreme Court said, "A method * * * is not to be rejected as 'functional' merely because the specifications show a machine capable of using it."

The rule was stated and thoroughly discussed in Re Parker, 79 F.2d 908, 910, 23 C.C.P.A., Patents, 721. There we quoted with approval certain phases of this question which had been discussed by the board but we found ourselves in disagreement with its conclusion and stated: "From all the authorities it appears that the rule has become well settled that if the method of a claim can be performed by any other apparatus than that of the applicant, or if it can be performed by hand, it cannot be said that the claim recites the mere function of the apparatus so as to make its allowance double patenting. We think this rule, when applied to the issue at bar, controls the decision of the only question presented. If the steps of the method may be performed by other apparatus or by hand, the ground of rejection by the Board, we think, must be held to be unsound."

Then we pointed out that in that case the board concluded that the steps could be performed by hand and we reversed the decision disallowing the claim.

In the instant case, as we read the decision of the examiner, he rejected claim 22 by reciting that it was old, as shown by the prior art, to control the temperature of a salt bath furnace by pyrometric control. In other words, this portion of his decision rejects claim 22 upon the prior art.

The board apparently agreed with the examiner that claim 22 did not define the real subject matter in issue, i. e., a radiation pyrometer tube. In the above-quoted statement of the board with respect to this claim, however, it used language so broad as to imply that if a method claim sets forth the function of a specific apparatus it is not allowable. It may or may not be allowable, depending upon the applicability of the rule stated in Re Parker, supra, and in many other decisions handed down by this court.

It seems to us that the claim is objectionable on the ground that it is not inventive over the method of operation of the devices of the prior art, and we think the claim is so broad as not to cover the elements which are so specifically defined in claims 10, 17, 23, and 24 as to cause their allowance by the board. We think the claim was properly rejected by the examiner in one of his grounds of rejection, namely, on the prior art, because while a method claim is not necessarily bad because it reads upon a device for performing the method where there is more than one way of performing it, a method claim that does nothing more than define the method of operation of a cited prior art device is certainly not an allowable method claim.

We interpret the holding of the examiner to be that claim 22 defines *nothing inventive over the cited prior art.* This ground of rejection the board did not definitely disagree with although it implied that the claim was not "anticipated" by the prior art.

In the instant case the situation seems to be very much like that which prevailed in Re Ernst, 71 F.2d 169, 21 C.C.P.A., Patents, 1235. There it was pointed out that under the general rule it would be proper to allow a method claim which described the function of a machine if the method could be performed by other means and it was then held that it was not apparent that the method there under consideration could be done in any other way than on the precise machine described in the allowed apparatus claims. We held that the method was dependent upon the machine and that nowhere had it been pointed out that the process could be carried out except by means of the apparatus. In the instant case it is our view that appellants' contention with respect to the allowability of the method claim is without merit and that

they have not pointed out any other means by which their method could be carried out except on their machine and we know of no other way it could be carried out except on their furnace.

We find ourselves in agreement with the holding of the board affirming the rejection by the examiner of the claims here on appeal and its decision is affirmed.

Affirmed.