36 C.C.P.A.(Patents)

## Application of ASHBAUGH.
### Patent Appeal No. 5535.

United States Court of Customs
and Patent Appeals.
March 1, 1949.

Albert Grobstein, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, rejecting method claims 15 to 20, inclusive, of an application for a patent for a method and apparatus for injection of plastics in a continuous strip. Eight apparatus claims were allowed.

The involved claims were rejected by the Primary Examiner as reciting nothing more than the mode of operation of appellant's device, and because in the opinion of the examiner they do not recite a method of treating material, such as falls within the meaning of the statutes. The Board of Appeals affirmed the decision of the examiner on the first ground of rejection and reversed it on the second ground.

Claim 15 is considered illustrative of the subject matter defined by the involved claims and reads as follows:

"15. A process of continuous extrusion molding of plastic material by intermittent applications of pressure upon the plastic material to obtain a continuous extruded length that includes, applying a first source of relatively constant extrusion pressure upon a body of plastic material in an extrusion chamber to force the material therefrom, introducing a fresh charge of plastic material into a feeding chamber that communicates with the extrusion chamber while continuously maintaining the first extrusion pressure upon the body of the plastic material in the extrusion chamber to continue extrusion thereof, and applying a second source of relatively constant extrusion pressure of a value equal to the first source upon the fresh charge of plastic material to move the fresh charge into communication with the extrusion chamber

while the first pressure is still applied upon the material to maintain constant pressure upon the body of plastic material in the extrusion chamber to cause continued extrusion therefrom and concomitant recharging of the extrusion chamber from the fresh charge of plastic material when the first source is recovering for another operation."

The invention relates to an injection apparatus particularly adapted for continuously ejecting plastic material from an injection cylinder so that continuous length strips are produced. A rather complex device is disclosed comprising a horizontal extrusion chamber on the forward end of which is an extrusion die. There are two reciprocal plungers motivated by hydraulic motors for applying pressure upon the plastic material in the extrusion chamber and extruding the material through the die. One of the plungers functions in a cylindrical feed channel which opens into the extrusion chamber at an angle of about 45 degrees with relation to the second plunger which is aligned in its annular channel with the extrusion chamber. A feed hopper into which the granular plastic is placed feeds the material into the channel of the first plunger when the bottom end of that plunger is so positioned that the mouth of the hopper is open. The channel through which the second horizontal plunger functions is a reciprocal sleeve which operates in a backward and forward movement by means of hydraulic motors. The sleeve when in a forward position completely cuts off the feed channel in which the first plunger operates, as the second plunger continues the pressure upon the extrusion chamber.

While the sleeve is in a closed position, the first plunger is retracted beyond the mouth of the feed hopper so that a fresh charge of the plastic material enters the feed channel. When the fresh charge has been delivered, the sleeve is retracted so as to open the mouth of the feed channel. The pressure on the plastic material throughout the extrusion chamber and die is constant by reason of the action of the plungers.

The examiner, in rejecting the method claims as reciting nothing more than the mode of operation of applicant's device, relied upon the case of In re Ernst et al., 71 F.2d 169, 171, 21 C.C.P.A., Patents, 1235. The Board of Appeals held that the facts in the instant case appear to be quite similar to those in the case of In re Ernst, supra, and quoted from the holding therein as follows:

"Nowhere in appellants' specification is it pointed out how their process could be carried out except by means of apparatus for which they have been allowed claims, and we agree with the decision of the Board of Appeals wherein it is stated that ' * * * it is not apparent how the alleged method could be performed independently of this specific apparatus or one having exactly equivalent corresponding elements.' "

We find no error in the decision of the board.

A careful examination of the application shows that no method of any kind is expressed therein other than statements in the objects of the invention that it is to provide a method as well as an apparatus for extruding continuous length plastic articles or strips.

Counsel for appellant stresses in his brief that the objects of appellant's invention include both method and apparatus. It is quite true that in the application, as hereinbefore stated, method is mentioned, but we find nowhere therein a description of a method which is divorced from the mere operating of the machine which depends upon an elaborate hydraulically and electrically controlled means.

It is not disputed, as stated in the brief for appellant, that mechanical operations may be covered by process claims. As pointed out in the brief of the solicitor, that question has been well settled in the case of Expanded Metal Company v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034. Furthermore, claims which recite the mere function of an apparatus have been consistently rejected by the tribunals of the Patent Office, which rejections have been affirmed by this court. Typical of such decisions are the cases of In re Nichols, 171 F.2d 300, 36 C.C.P.A. (Patents) ——; In re Solakian et al., 155 F.2d 404, 33 C.C.P.A.,

Patents, 1054; In re Cornell, 150 F.2d 569, 32 C.C.P.A., Patents, 1161; In re Mead, 127 F.2d 302, 29 C.C.P.A., Patents, 1001; In re Wadman, 94 F.2d 993, 25 C.C.P.A., Patents, 936; In re Francis H. Weeks, 48 F.2d 662, 18 C.C.P.A., Patents, 1234; and In re Ernst et al., supra.

In view of those cases, in order that appellant may prevail, it is necessary for him to show that the method described in the involved claims is capable of being performed by other apparatus or means different from that of his device.

Counsel for appellant contends that the involved process can be carried out by various devices. In support of that contention he states that the pressure applied by the second plunger can be obtained by the application of hydraulic or pneumatic pressure upon the plunger or that such pressure could be directly applied to the plastic material in the cylinder wherein the plunger operates, thereby completely eliminating the plunger. In that event he reasons that the plastic material could be moved forward by direct application of such pressure through controlling the delivery of the material into the cylinder at a constant rate or volume. He also contends that the second plunger can be operated mechanically at a constant rate of forward motion using a common rack and gear mechanism or by means of a cam. He states that that plunger could be moved in a forward direction at a constant rate for applying pressure on the plastic material at the same rate by having one end of the plunger formed into a large screw and rotated within a cooperating internally threaded member so as to move the plunger forward at a constant rate. Counsel for appellant further states that the first plunger through which the fresh charges of material are pressed into the injection chamber could be operated either pneumatically or hydraulically, and that such pressure could be applied directly upon the material in the cylinder through which the first plunger operates so as to maintain a constant pressure in the same manner as that accomplished by the plunger. It is also stated that the sleeve through which the second plunger functions could be entirely eliminated and a butterfly or gate type of valve could be placed in the lower end of the feeding cylinder and the plastic material could be fed into the hopper by means of a rotating screw rather than by gravity, as illustrated.

We see nothing in the suggested modification of appellant's apparatus that substantially changes the essential character of that apparatus. Counsel for appellant is suggesting merely alternatives in parts of his device.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.