37 C.C.P.A. (Patents)

In re WASHBURN.
Patent Appeal No. 5684.

United States Court of Customs and Patent Appeals.

May 9, 1950.

James B. Christie, Pasadena, Cal. (Richard L. Underwood, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office sustaining that of the Primary Examiner rejecting method claims 7 and 8 of an application for a patent for the analysis of mixtures with a mass spectrometer. Four apparatus claims were allowed.

The claims in issue read as follows:

"7. In a process for analyzing a gaseous mixture by mass spectrometry involving the production of ions from gas molecules and the projection of the ions through an aperture by impressing an electrical potential on the ions, the improvement which comprises subjecting the ions to an electrical potential having a component parallel to the axis of the aperture and a component transverse to the axis of the aperture.

"8. In a process for analyzing a gaseous mixture by mass spectrometry involving the production of ions from gas molecules in an ionization region and the projection of the ions from the region through an aperture by impressing an electrical potential on the ions, the improvement which comprises subjecting the ions, prior to their passage through the aperture, to a voltage which has a component in a direction transverse to the axis of the aperture."

Claim 3 is representative of the allowed apparatus claims and reads as follows: "3. In a mass spectrometer having an ionization chamber provided with a first electrode having an ion outlet aperture, and means for impressing a potential across at least a portion of the chamber to the aperture for propelling ions from the chamber through the aperture, the combination which comprises a plurality of electrodes mounted in the chamber, opposite the aperture, means for impressing different potentials between the respective electrodes of the plurality and the first electrode, means for introduc-ing molecules into the space between the first electrode and the plurality of electrodes, and means for directing an electron beam into said space."

All of the allowed claims define an apparatus which includes an ionization chamber with a first electrode having an ion outlet aperture, a plurality of electrodes mounted in the chamber opposite the aperture, and means for impressing different potentials between the respective electrodes of the plurality and the first electrode.

In mass spectrometry, gas molecules are converted into ions by bombarding the molecules with a beam of electrons in an ionization chamber. As they are formed, the ions are projected through an aperture by an electrical potential established between the apertured electrode and a "pusher" electrode disposed elsewhere in the chamber. After passing through the aperture, the accelerated beam of ions passes through a transverse magnetic field which deflects the ions into curved and diverging beams of ions of different specific mass, forming thereby a spectrum of ions of different weights. By varying the accelerating potential or the magnetic field, the radii of curvature of the ion beams may be changed, permitting each beam to be focused successively on an outlet slit through which they pass onto a collector electrode. There the ions give up their electrical charges, the amount of charge in each case being the measure of the abundance of each kind of ion.

Appellant's improvement is concerned with that phase of mass spectrometry involving the establishment of the electrical potential to propel the ions out of the ionization chamber. Specifically, his improvement resides in subjecting the ions to an electrical potential which includes a component transverse to the axis of travel of the ion beam through the outlet slit. Appellant provides a potential which includes a component transverse as well as parallel to the axis of ion travel. This is said to enable a sharper focusing of the ion beams on the collector plate, improving the sensitivity of the operation, and resulting in more accurate analysis.

Appellant's specification contains a description of an apparatus for accomplishing his improvement. The structure consists of an ionization chamber into one end of which gas molecules enter through a conduit disposed between two "pusher" electrodes. At the other end of the ionization chamber portion of the structure are two parallel plates or electrodes transversely disposed and provided with a central opening, termed outlet slits. Beginning just past the end of the ionization chamber, the structure consists of a semicircularly curved tube, at the opposite end of which is a slit opening upon the electrode collector plate. An electron beam passes through the ionization chamber, ionizing the gas molecules. The ions are propelled through the outlet slits by means of an electrical potential impressed between the first plate or electrode and the "pusher" electrodes. The ions are further accelerated by an additional potential impressed upon the first plate and the second parallel transversely disposed plate. Before appellant's improvement, but one "pusher" electrode was used. In his apparatus, one potential difference is impressed between one "pusher" electrode and the first of the beforementioned plates, and a different potential difference is impressed between the other "pusher" electrode and the first electrode plate. The effect of using the two "pusher" electrodes with the different potentials is to subject the ions to a voltage having a component transverse to the axis of the slits as well as a component parellel to that axis. Appellant characterizes this effect as a "crossed field."

The allowed apparatus claims embrace the apparatus set forth in appellant's specification.

The involved method claims were rejected by the examiner on the ground that they recite merely the inherent functions of appellant's apparatus. The examiner stated that the improvement recited in the method claims consists of the step of subjecting the ions to an electrical potential having a component transverse to the axis of the first electrode, and held that the step is automatically performed when the apparatus is functioning normally. The board agreed that the step of subjecting the ions to a voltage having a transverse component is "the inherent function or result of the means for impressing different potentials between the pusher electrodes recited in the apparatus claims."

Appellant contends that the method defined in the appealed claims employing the "crossed field" is independent of the apparatus employed for producing it, and consequently that the appealed claims should be allowed. After the board's decision was rendered, the appellant filed a petition requesting reconsideration. In his brief in support of the petition he alleged that prior to filing the involved application he had developed at least two types of apparatus for carrying out the method defined by the appealed claims. In support of his petition, appellant filed an affidavit of Sibyl M. Rock, a mathematician employed by the Consolidated Engineering Corporation as a Technical Consultant and assigned to research and development of mass spectrometers. Affiant stated that in October 1941 he prepared a report on experimental work then in progress in mass spectrometry, and called attention to three pages of his report, appended to his affidavit, "which show that at least as early as October 8, 1941, Dr. Washburn, the Applicant * *, had conceived of at least two means for producing a transverse potential component in an ionization chamber to increase the sharpness of focus and the sensivity of mass spectrometers." Mr. Rock stated that appellant at that time disclosed to him that the additional means for accomplishing the transverse potential component in the ionization chamber (other than that shown in the application) consisted of "employing additional electrodes on each side of the exit slit between the pusher electrode and the exit slit in the ionization chamber," as illustrated by an Exhibit B, which is reproduced in the record and in appellant's brief on appeal. The board considered appellant's petition and the affidavit of Mr. Rock, but did not alter its decision.

Appellant insists that it would be possible to perform the claimed method by means of apparatus other than that disclosed in his application, and he has incor-

porated into his brief the Exhibit B appearing of record as an appendix to Mr. Rock's affidavit. In that Exhibit, a structure is depicted wherein a single "pusher" electrode is placed coordinate to the axis of the electrode slits of his original apparatus. A pair of "focusing" electrodes are disposed at opposite sides of the ionization chamber in an axis transverse to the longitudinal axis defined by the "pusher" electrode and the opening slits. By impressing different voltages on the "pusher" electrode and the first electrode and impressing different voltages on the "focusing" electrodes, a "potential gradient" parallel and a "potential gradient" transverse to the longitudinal axis are said to be established, whereby the method defined in the appealed claims can be performed. Appellant contends that the Exhibit B apparatus is not the equivalent of the apparatus covered by the allowed claims.

The step of subjecting the ions to a voltage which has a transverse component is the inherent function or result of the means for impressing different potentials between the "pusher" electrodes and the first electrode recited in the apparatus claims. Appellant's contention that the same result could be obtained by using the alternative apparatus disclosed in Exhibit B appended to Mr. Rock's affidavit, does not warrant his conclusion that therefore the method claims should be allowed. The alternative apparatus is, as the board held, no more than the obvious equivalent of the apparatus disclosed in appellant's specification relating to the apparatus claims which have been allowed.

[1–3] The court has repeatedly held that process or method claims which merely recite the function of an apparatus are not allowable, In re Ashbaugh, 173 F.2d 273, 36 C.C.P.A., Patents, 902; In re Nichols, 171 F.2d 300, 36 C.C.P.A., Patents, 759; In re Wadman, 94 F.2d 993, 25 C.C.P.A., Patents, 936; In re Ernst et al., 71 F.2d 169, 21 C.C.P.A., Patents, 1235, and cases cited. Where the claimed method is dependent on the claimed apparatus and incapable of being performed by hand, where the claimed apparatus will inherently carry out the steps set forth in the appealed claims, and where there is not disclosed any apparatus capable of carrying out the process and differing substantially from that described in the application, the method claim should be rejected. In re Middleton, 167 F.2d 1012, 35 C.C.P.A., Patents, 1166. Pertinently, the court there said, 167 F.2d at page 1013, 35 C.C.P.A., Patents, at page 1167: "It is evident that the processes defined by [the claims] are intimately related to the particular apparatus disclosed. That apparatus will inherently carry out the steps set forth in the appealed claims, and the application does not disclose any other use to which the apparatus may be put. Conversely, the application does not suggest any way in which the steps claimed can be carried out except by the use of the apparatus disclosed."

Thus, a process which cannot be described otherwise than by describing the characteristic functions of a machine is not made patentable by showing that it may be carried out by another machine which has the same characteristic function respecting the result to be attained, Black-Clawson Co. v. Centrifugal Engineering & Patents Corp., 6 Cir., 1936, 83 F.2d 116, certiorari denied, 299 U.S. 554, 57 S.Ct. 16, 81 L.Ed. 408.

Appellant's method is obviously incapable of being performed by hand. The apparatus he suggested as an alternate means to that disclosed in his specification for carrying out the method defined by the appealed claims is, as we have seen, the functional equivalent of the claimed apparatus, embodying as it does the same characteristic functions of that apparatus. As said by the court in Re Nichols, supra, 171 F.2d at page 302, 36 C.C.P.A., Patents, at page 762: "It follows that, where the record indicates a single means of carrying out the process and other independent means are not obvious, a process claim which merely states the function or effect of a machine must be held to be unpatentable under the long established rule of this and other courts." See also Swan Carburetor Co. v. Chrysler Corporation, 6 Cir., 1942, 130 F.2d 391, certiorari denied, 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554. Here,

as in Re Ernst et al., supra, 71 F.2d at page 171, 21 C.C.P.A., Patents, at page 1239: "It seems to us that appellants' so-called process is inseparably connected with the apparatus described by them, and for which they have been allowed claims. Their invention was not complete without apparatus with which to apply the process, and as the apparatus itself was inventive, and no other means are shown for applying the process, we do not see how it could be said that the process claims and the apparatus claims are both allowable."

Appellant's application contained a description of the apparatus upon which he was allowed apparatus claims. His specification also describes how that apparatus may be used. Appellant seeks additionally the allowance of method claims, but his application contains no description of how that method may be used apart from the apparatus upon which he has been allowed apparatus claims. R.S. § 4888, 35 U.S.C. § 33, 35 U.S.C.A. § 33, requires that before a patent may be granted to an applicant for an invention, he must not only make application, but he must also file in the Patent Office a written description of the invention and the manner of using it in such full and exact terms as to enable any person skilled in the art to use that invention. The appellant filed a written description of the method claimed. He did not file a written description of any apparatus or means by which his method could be used other than his description of the apparatus covering which he has been allowed apparatus claims. From the record, no conclusion is possible other than that the method claimed is merely the function of that apparatus. Appellant asks for the grant of the monopoly of method claims broadly drawn without offering as his required consideration to the public the teaching of how that method may practically be employed other than the description of an apparatus whose operative functions embody the claimed method and covering which he has been allowed apparatus claims. For the teaching of a single apparatus, the appellant is asking not only for the monopoly to exclude others from making, using, or selling his apparatus, but also the broad monopoly of method claims which would exclude the public from accomplishing the method defined in any way without teaching any possible means of practicing the method other than the specific apparatus for which he is granted coverage aliunde the method claims. This the statute does not permit. Furthermore, it cannot be said that appellant has invented a new "art" within the meaning of R.S. § 4886, 35 U.S.C. § 31, 35 U.S.C.A. § 31, if he merely recites the functions of an apparatus on which he is separately allowed patent claims. As said by the circuit court of appeals in American Lava Co. v. Steward, 6 Cir., 1907, 155 F. 731, 738, affirmed, 215 U.S. 161, 30 S. Ct. 46, 54 L.Ed. 139: "No doubt it is competent, when the circumstances permit it, for an inventor in describing a machine or apparatus which he has devised, to make a claim for a process which his patented device is capable of carrying out. But to entitle him to do this *the process must be one capable of being carried out by other means than by the operation of his patented machine, and, unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out;* for, unless the public are informed by what other means the process can be carried on, the process is to them nothing else than the operation of the machine—in other words, the exercise of its functions." (Emphasis supplied.)

The appellant failed to point out in his specification means by which the claimed method may be carried out other than the operation of the apparatus for which he has been granted apparatus claims. The method is incapable of being carried out by hand, and it does not appear that other means for using the method are known or within the reach of those skilled in the art. The alternate means proposed by the appellant comprise an apparatus which embodies the same characteristic functions of that described in the application for which claims have been granted, and is considered to be a mere equivalent of that apparatus. Under the authorities, the appellant may

not be granted method claims. We have given careful consideration to his brief and argument, but cannot hold that the board erred in rejecting the method claims.

The decision appealed from is affirmed.

Affirmed.