41 C.C.P.A.(Patents)

**Application of HORVATH.**

**No. 6013.**

United States Court of Customs
and Patent Appeals.
March 23, 1954.

Richard R. Fitzsimmons, Chicago, Ill., for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON, JJ.

JACKSON, Judge.

Appellant has appealed from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claims 2, 3, 11, 20 to 23 inclusive, and 27 to 37 inclusive of an application for new and useful improvement in Electric Toasters filed December 13, 1946, Serial No. 719,351. Seven article claims were allowed.

The invention relates to electric bread toasters and particularly to a thermal timing mechanism for regulating the duration of the timing interval whereby bread may be toasted exactly as the operator desires. The timing control is obtained by means of a thermally responsive element arranged to be heated during the toasting operation and moving from a cold to a hot position in order to release a latch for terminating the process of toasting. The thermal mass is a means having a capacity to absorb heat and subsequently requires some time to supply sufficient heat to raise the timer to a predetermined temperature and, conversely, to cool it down again from that temperature. The thermally responsive element is a thermostat or bimetal of small mass which, because of its size, responds very quickly to a source of heat when applied to it and the temperature thereof follows closely the temperature of the heat source. It is said that the thermal mass acts as a brake retarding the action of the thermally responsive element. According to the invention, the heat absorbing means is brought into a heat exchange relationship with the thermally responsive element at the beginning of the toasting intervals.

The cited prior art relied upon by the tribunals below are:

| | | |
|---|---|---|
| Hawes | 2,038,361 | April 21, 1936 |
| Ireland | 2,099,210 | November 16, 1937 |
| Sardeson | 2,162,899 | June 20, 1939 |
| Myers | 2,301,070 | November 3, 1942 |

Auxiliary references of record:

| | | |
|---|---|---|
| Winborne | 2,250,979 | July 29, 1941 |
| Koci | 2,426,620 | September 2, 1947 |

The Hawes patent relates to a turning and ejecting device for cakes, bread, and other like articles, which are baked in gas-heated or other forms of stoves. Its object is to provide a structure wherein

accurate baking may be secured and at the same time the article being cooked is automatically removed.

The Ireland reference relates to an automatic electric toaster, an object of which is to provide a purely thermal means to control the duration of a toasting period. In that patent a slice of bread is rolled on a carriage between a pair of heating elements. The bread is cammed laterally into engagement with the thermostat and during such engagement the bread is said to delay heating of the thermostat. Near the end of the heating time, the thermostat deflects away from the bread and opens a switch to time the cycle.

The Sardeson patent relates to an automatic toaster. It is stated that an object of the invention is the provision of an automatic toaster embodying a thermally controlled timing device operable to vary the position of a thermal element relatively to the heating means of the toaster in accordance with the operating conditions thereof. The disclosure of the patent is a clock timer, which is controlled by a thermostatic element. The main timer is the clock having a spring wound a definite number of turns each time the bread carriers are moved down to a toasting position. As the process of toasting proceeds, the spring is unwound a definite number of turns so that the bread carriers are released and the toasting terminated. When the bread carriers are moved down to a toasting position the heaters on either side of the bread are energized and, when the carriers are released at the termination of the toasting, the heaters are deenergized. Escapement mechanism is provided for controlling the speed of the clock. That mechanism includes an oscillator which is slotted and straddles an eccentric on a shaft so that oscillation occurs as the clock unwinds. The oscillator is mounted on a pivoted arm so designed that the slot has upward and downward movement relative to the eccentric. A bimetal control means is disclosed below the bottom of the heaters and, when heated, acts to move the oscillator downwardly so as to increase the speed of the unwinding of the clock's spring and each time the carriers are moved to a toasting position the bimetal means moves so as to contact with a heat receiving and transmitting means, which is positioned at the bottom of the heating elements.

The Myers patent relates to an automatic electric bread toaster. In that patent as in the patent to Ireland, a slice of bread appears to be the means by which the heating of a thermostat is delayed.

The Winborne patent relates to a thermal timing device designed to control heating periods of appliances such as a bread toaster. It was placed in the record of the Primary Examiner to exemplify prior use of a heating transmitting means between an electric heater and thermostat in a thermal timing structure. The Examiner noted that in this reference there is no move of the anchored end of the thermostat away from the heat transfer mass.

The Koci patent relates to a temperature responsive control mechanism but the board, noting that the Examiner did not use the Winborne and Koci auxiliary references in rejecting the claims, found it unnecessary to discuss them in its decision. Therefore, they will not be discussed by us.

We find, as did the Board of Appeals, that claims 2 and 20 are representative and they read as follows:

"2. A toaster including bread carriers removable from an upper bread receiving position to a lower toasting position and spring-biased to a bread receiving position, a latch for latching said bread carriers in toasting position, a thermal timer for said toaster including a thermally responsive element and a thermal mass adapted to be moved into contact with said thermally responsive element, said thermally responsive element being movable from a cold position to a hot position when heated, means for moving said toast car-

riers to toasting position, means actuated by movement of said bread carriers to toasting position for supplying heat to said thermal timer and for moving said thermal mass into heat exchange relationship with said thermally responsive element to add its mass to that of said thermally responsive element to delay the movement of the latter to its hot position and means actuated by movement of said thermally responsive element upon movement to its hot position for releasing said toast carriers and for discontinuing the supply of heat to said thermally responsive element.

"20. The method of timing succeeding toasting operations by means of a thermal timer having a thermally responsive element, and a plurality of bodies having a thermal mass comprising, supplying heat to said thermally responsive element and a first one of said bodies to initiate a first timing operation while maintaining them in heat exchange relationship with each other until said thermally responsive element and said first body reach a predetermined temperature, permitting said thermally responsive element to move out of heat exchange relationship with said first body while continuing the supply of heat to said thermally responsive element until said thermally responsive element reaches a predetermined temperature higher than said first temperature, simultaneously terminating the supply of heat to said thermally responsive element to terminate said first toasting operation, permitting said thermally responsive element to cool so as to return to its original position and supplying heat to said thermally responsive element and a second one of said bodies to initiate a second toasting operation while conditioning said first body for a succeeding toasting operation."

Claims 2, 3, 11, 22, 27, 28, 34, and 35, all of which are article claims, were rejected as failing to patentably define over the Sardeson reference. Claims 20, 21, 29, 30, 31, 33, and 36 were rejected as being improper method claims. Claims 22, 23, 29, 31, 35, and 36 were rejected as failing to patentably define over Ireland or Myers. Claims 32 and 37, both of which are article claims, were rejected as being indefinite in that the Ireland and Myers references are avoided by the statement of function.

The Primary Examiner suggested that the involved combination is being overclaimed and that fewer more comprehensive claims would and should be presented. He stated he believed that position to be sound, particularly in view of the developed art.

The Board took no action upon that suggestion for the reason that the claims were not rejected on the ground of undue multiplicity.

Subsequent to the decision of the board, counsel for appellant filed a petition for reconsideration relating principally to the rejected method claims. In the petition counsel stated that at the hearing by way of argument and to exemplify a different apparatus than that disclosed by the present application by which the steps of the involved method claims could be carried out, a patent to Sutton, No. 2,585,514, dated February 12, 1952, had been referred to and that three copies had been presented for consideration by the board. That patent is before us.

The Sutton patent refers to the involved application, stating that it is a further development of the timing mechanism disclosed and claimed herein.

The Sutton patent relates to a toaster timing mechanism in which there is a thermally responsive element which is surrounded by a liquid receiving chamber. During the timing periods, the liquid is vaporized, then condensed and trapped out of the circuit. The ther-

mally responsive element is quickly heated when the liquid is vaporized and then the time interval terminates. The condensed liquid is brought back into heat exchange with the thermally responsive element for performing a succeeding operation.

An alternative construction is mentioned in the Sutton patent, which involves the use of a fusible solid as the thermal mass which becomes fused or melted during the timing operation and is again brought back into heat exchange with the thermal element for a succeeding timing operation.

Responding to the petition for reconsideration, the Board of Appeals answered in a further decision that it had considered the disclosure of the Sutton patent and also the alternative construction. The board was of the opinion that the alternative means contended for as carrying out the process herein were the functional equivalent of the apparatus in the allowed claims herein and consequently not of such a character as to render the method claims allowable. In support of that statement, the board cited In re Washburn, 182 F.2d 202, 37 C.C.P.A., Patents, 1094.

The board declined to change its original decision stating that in its opinion the type of method claims presented by appellant, where all of the acts which constitute the steps of the process or method are restricted solely to the action or the results of the action of a particular machine, are not patentable, citing In re Kinderman, 178 F.2d 937, 37 C.C.P.A., Patents, 800.

In our opinion the Sardeson patent is not a pertinent reference. The timing combination there provides for a bimetal which has for its purpose speeding the action of the clock and heat transmitter which is between the thermal element and the heating element. To our way of thinking, it should not be considered a thermal timer such as is defined in the involved apparatus claims. All of those claims set out that the thermal timer either consists of or comprises a thermally responsive element and a heat absorbing means, the latter of which we fail to find in the Sardeson patent. In our opinion, the clock timer there disclosed which is speeded by a heat transmitter is not the same or the equivalent to the thermal timer defined in the rejected claims.

The Sardeson patent does not disclose, as called for in the rejected article claims, "a thermal mass," "heating absorbing means," "cooling block," nor the equivalents thereof. The patent, as we interpret it, does not disclose a "heat absorbing means" or the equivalent thereof which delays the action of a thermally responsive element. It further appears to us that the bimetal disclosed in the Sardeson patent does not move out of contact or heat exchange relationship with the heat transmitter during toasting operations. Instead the free end of the bimetal merely flexes to speed the action of the clock.

With respect to the rejection of apparatus claims 22, 23, and 35 and method claims 29, 31, and 36 as defining nothing over the Ireland or the Myers patents, in our opinion neither of those patents disclose a timer at all in that there is no measure of the passage of a certain interval of time. It is shown in both the patents that the toasting intervals are terminated by measuring the surface temperature of the bread being toasted. It is obvious that the slice of bread does not act as an element of a thermal timer where the toasting depends on the condition of the bread as to size, moisture, or dryness. Therefore, with respect to those claims, we hold the cited prior art is inapplicable.

As to method claims 20, 21, 29, 30, 31, 33, and 36, which were rejected below as being improper on the ground that they are merely descriptive of the functioning of the parts of a particular thermal timer or some combination thereof, we recognize the well settled law that process or method claims merely claiming the function of the apparatus are not allowable, as has been

held in a long line of decisions from this court, the latest of which brought to our attention is In re Washburn, supra.

■ Appellant has disclosed only one apparatus form in his specification but contends that the process defined in the method claims can be performed by other devices that are not disclosed and at least partially by hand. It seems to us that mere alternatives in parts of a device which do not materially change its essential character cannot overcome the rejection. In re Ashbaugh, 173 F.2d 273, 36 C.C.P.A., Patents, 902. It is clear to us that the method claims herein merely describe the functioning of the thermal timer, or some combination of appellant's claims, and that the statement in the Sutton patent that the timing means disclosed there is a further development of the mechanism disclosed and claimed in the instant application convinces us that the method of the patent is merely an alternative to the rejected method claims here.

As to carrying out the process by hand, the argument of counsel for appellant does not convince us. As stated in the decision of the board, we do not believe it possible to manually transfer heat from the responsive member to the thermal mass. The cases cited in that decision are apposite herein. In re Ashbaugh, supra; In re Middleton, 167 F.2d 1012, 35 C.C.P.A., Patents, 1166; In re Kinderman, 178 F.2d 937, 37 C.C.P.A., Patents 800; In re McCurdy, 76 F.2d 400, 22 C.C.P.A., Patents, 1140; and In re Washburn, supra.

In our opinion, it is anything but clear that the steps of the method claims are not merely functions of the particular apparatus described herein. Furthermore, we have not been convinced that those steps could be carried out in the use of any materially different kind of apparatus or by hand.

Article claims 32 and 37 were rejected as being indefinite because of functional definitions contained therein, as instanced in the last seven lines of claim 32 reading as follows:

"* * * said heat absorbing means being of such nature and so related that they will be removed from heat exchange relationship with each other upon reaching a predetermined temperature whereby heat will be applied solely to said thermally responsive element so that it will be quickly heated to cause it to move and terminate the controlled operation."

It appears from a reading of claim 32 that, after certain elements have been set out, there is a statement of the functions attributable to such elements. To our way of thinking, it does not point out and distinctly claim the elements constituting the subject matter which appellant regards as his invention.

■ For the reasons hereinbefore set out, the decision of the board rejecting claims 2, 3, 11, 22, 23, 27, 28, 34 and 35 is reversed and the rejection of claims 20, 21, 29, 30, 31, 32, 33, 36, and 37 is affirmed.

Modified.

JACKSON, J., retired, sat in place of GARRETT, C. J.