Worley, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claim 168 of appellant’s application for a patent on a bottle-forming machine and method. The "appeal w-as. originally argued on March 6, 1956, and, by order of the court, was reargued November 7, 1956. Claims 33, 34, 44, 73, 161, 167, and 169 were also included in the notice of appeal but have been withdrawn.
The appealed claim, which is drawn to a method of making glassware, is as follows:
168. In a method of making glassware upon a rotating glass machine-having a set of blank molds around it at one level and a set of finish molds around it at another level thereby providing a plurality of mold sets each having a blank mold and a finish mold: the steps of charging a blank mold at a charging point in the rotation of the machine, with a charge of glass; forming an inverted parison in the blank mold with a portion of its top surface shaped like the final ware, and with its lower parts finished; holding said parison in the mold until it becomes relatively stiff to withstand subsequent transfer to the finish mold; engaging the finished top surface of the stiff parison by interfitting a transfer head therewith and-drawing' a- suction-thereon-; opening-the blank molds swinging the párísoñ to reverted position while holding the suction thereon, and enclosing the same with the section head in the finish mold; reclosing the blank mold and recharging it while the parison is thus within the finish mold, so as to prepare a new párison; forming the parison into finished ware in the finished mold while formation of the subsequent parison is occurring in the blank mold; opening the finish mold and withdrawing the completed ware in time to make the transfer head available to engage the subsequent parison by the time of the completion thereof; and thereafter repeating the cycle.
The following references are of record:
Proeger, 744,007, November 10, 1903.
Winder, 1,072,553, September 9, 1913.
Lorenz, 1,647,532, November 1, 1927.
Tremblay, 1,648,792, November 8, 1927.
Ingle, 1,654,731 January 3, 1928.
Ingle, 1,680, 544, August 14, 1928.
*797 Peiler, 1,826,019, October 6, 1931.
Smith, 1,946,985, February 6, 1934.
Rowe, 2,043,065, June 2, 1936.
Rowe, 2,063,463, December 8, 1936.
Bridges, 2,254,992, September 2, 1941.
Slick, 2,278,572, April 7, 1942.
Young, 2,328,873, September 7, 1943.
Winder, 2,466,669, April 12, 1949.
Appellant’s application discloses a very complicated machine for forming glass bottles. The machine comprises a large rotary turret on which are mounted, at one level, a set of preliminary molds, known as blank molds, and, at another level, a set of finish molds, the arrangement being such that each blank mold is adj acent- to a finish mold. As the turret rotates, the blank molds pass successively under a charging apparatus which deposits in each of them enough glass to form a bottle. The glass is shaped, by automatic devices, in each blank mold to form an inverted preliminary shape, known as a parison, in which the top and bottom portions correspond.to those of the bottle in final form, while the intermediate portion requires further ¿abiding.' Associated with each blank mold is a transfer device which includes a suction head adapted to engage the parison, revert it to upright position, and transfer it to the corresponding finish mold.
After each blank mold receives its charge the turret continues to rotate while the parison is formed and cooled sufficiently to permit its being engaged by the transfer apparatus, whereupon "that apparatus, is automatically operated to remove the parison and place it in the finish mold where it is molded to final form and subsequently removed from the machine. The arrangement is such that a new charge of glass is fed into the blank mold while the first parison is still being shaped in the finish mold.
In sustaining the examiner’s rejection of the appealed claim as being drawn to the fmiction of an apparatus, the board said
* * * We consider that this type of rejection, imposes upon appellant a duty to show the method to be independent of the apparatus, which duty may be discharged by showing that the method may be performed by hand or by other apparatus different from that disclosed in the instant application.
In support thereof, the board cited In re Ernst et al., 21 C. C. P. A. (Patents) 1235, 71 F. 2d 189, 22 U. S. Pat. Q. 28; In re Nichols, 36 C. C. P. A. (Patents) 759, 171 F. 2d 300, 80 USPQ 143; In re Ashbaugh, 36 C. C. P. A. (Patents) 902, 173 F. 2d 273, 81 USPQ 129; In re Kinderman, 37 C. C. P. A. (Patents) 800, 178 F. 2d 937, 84 USPQ 242; and In re Washburn, 37 C. C. P. A. (Patents) 1094, 182 F. 2d 202, 86 USPQ 108.
*798 While the quoted statement is in accord with the decisions cited, it should be noted that, so far as situations such as that found here are concerned, the performance of a process by hand is not necessarily limited to the use of hands alone, but includes the use of prior art apparatus actuated by hand. As was aid-in In re McKee, 23 C. C. P. A. (Patents) 717, 79 F. 2d 905, 27 USPQ 353, “It would be. tenuous to urge that when the courts have spoken of performing by -hand what may be performed by a machine they meant by hand alone, -that- is to say, without the -use of some ordinary tool in common use.” The decision in In re Parker, 23 C. C. P. A. (Patents) 721, 79 F. 2d 908, 27 USPQ 340, is to the. same effect. It is evident, therefore, that if the process of tlie appealed claim can be carried-out by the-manual operation of- elements which are commonly known in the-prior art, it is not merely the function of the apparatus of the allowed-claims.
According to'our interpretation of the claim before us,, it.appears that the only elements of apparatus -expressly required to be present for the performance of the process of the appealed claim are a “rotating glass machine having a set of blank molds around it at.one level and a set of finish molds around it at. another level, thereby providing a plurality of mold sets each having a blank mold and a- finish mold,” and a suction transfer head.. The recited , arrangement of blank molds and-finish molds at different levels on a rotating glass machine is conventional in the prior art, being shown by both of the earlier patents to Winder, as well as. by the Young and Tremblay patents. The use-.of suction heads for transferring parisons on a rotary glass machine is shown by Slick and by the second Winder patent..- It follows that the claim does not expressly -require any new element, of apparatus or any new arrangement of old elements.
In our opinion the claimed process could be carried out with only tthe conventional elements above .mentioned-and a.source of 'molten glass, with all the steps recited in the claim capable of being performed by hand,;- It seems to.us that for such operation the blank and finish .molds could be mounted on,a rotary turret in the manner above, described, and--a-manually movable suction head mounted on the turret in association with each pair of molds. ' A source' of molten glass could be provided at a point adjacent the turret and the operator could take his station there.
The operator could begin by moving the turret either manually are by controlling a suitable motor until the first pair of molds arrived at his station, and then carry out the first step of the claimed process by manually -inserting a charge of glass in the blank mold. The second step could be carried out by manually operating whatever conventional mechanism was associated with the mold for giving the *799 parison its form. The third claimed step, holding the parison in the mold until it becomes stiff enough to transfer, involves nothing more than leaving the mold alone for the required time. During that period the operator might rotate the turret and charge other blank molds, bringing the first one back to his station when the parison had hardened sufficiently, although that type'of operation is not expressly required by the claim, which is concerned with the operation of only one pair' of molds. When the parison reached the proper hardness, the operator could manually interfit the suction head with it and open the valve to apply suction. Thereupon he could open the blank mold, by hand, and swing the parison to reverted position, either by rotating it about its pivot, if it were pivoted, or by lifting it and turning it by hand if it were not. After reverting the parison he could place it, manually, in the finish mold and enclose it thereon with the suction head after which he could manually reclose and recharge the blank mold. The formation of the parison in the finish mold could be carried out by manually operating whatever conventional blowing or forming means was associated with that mold, and the mold could then be opened and the completed parison withdrawn, after which the cycle could be repeated as desired.
' It thus appears that each of the manipulative steps recited in the appealed claim can be carried out by hand with the aid of nothing more than apparatus which was conventional in the art at the time appellant’s application was filed. The complex mechanism described therein and covered in his allowed apparatus claims is, therefore, not necessary to the performance of the claimed process. Since, in our opinion, that process cannot fairly be held to define merely the function of the apparatus, it is necessary to reverse the decision of the Board of Appeals.
Jackson, J., retired, recalled to participate herein in place of Cole, J., absent because of illness.