Morris PHILIP and K & J Trading Corporation

v.

WILDMAN JACQUARD COMPANY.

Civ. A. No. 22518.

United States District Court
E. D. Pennsylvania.

Dec. 9, 1963.

---

41. Tr. pp. 283–86.

956

Sigmund H. Steinberg, Steinberg, Richman, Price & Steinbrook, Philadelphia, Pa., W. Brown Morton, Jr., Pennie, Edmonds, Morton, Barrows & Taylor, Washington, D. C., for plaintiff.

Henry N. Paul, Jr., Robert B. Frailey, John H. Austin, Paul & Paul, Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is an action for infringement of United States Reissue Patent No. 25,101 to Philip for a knitting machine comprising mechanism the purpose of which is to change the knitting pattern, as for example, from plain knitting to rib knitting or the reverse, without changing the operating speed of the machine.

The patent has 28 claims of which claims 20 and 21—both of which are method claims—are the only ones in suit, it being conceded that the defendant's "AI" machine, the operation of which is charged to be an infringement of the method claims, does not infringe any of the apparatus claims. The validity of the method claims and the propriety of the reissue are challenged. The defense of noninfringement is especially stressed.

Claim 20 is as follows:

"In the operation of a knitting machine comprising at least one needle bank and a plurality of yarn feeds, said yarn feeds being aligned in a path parallel to said needle bank, said needle bank and said plurality of yarn feeds being moved relatively past one another with said yarn feeds being juxtaposed with respect to said needle bank so that the yarn supplied by each feed is normally engaged by the needles of the needle bank which are nearest thereto, the method of cyclically changing the pattern of knitting which comprises displacing some of said yarn feeds so that the yarn supplied thereby is shifted to a position in which the needle nearest the yarn feeds which have been displaced cannot engage the yarn supplied thereby and transferring the so shifted yarn to a next trailing yarn feed for delivery thereby to the needles of said needle bank which are nearest to the same, and then returning said displaced yarn feeds to their original position in which the yarn supplied thereby is once again engaged by the needles nearest thereto."

Claim 21 is substantially the same except that it adds as a second step "guiding the yarn supplied by said displaced yarn feeds to a point adjacent the yarn supplied by the yarn feeds immediately behind said displaced yarn feeds whereby the needles nearest the yarn feeds immediately behind said displaced yarn feeds will be simultaneously supplied with an increased number of yarns."

The product of the plaintiffs' machine is a sweater with rib knitted cuffs, the body being knitted in interlock. Although the claimed invention is not limited to the knitting of such fabrics, its only commercial use has been in this field.

Interlock consists of two ribbed fabrics interlaced, one superimposed upon the other in such a way that the ribs of one fill the valleys of the other. When an interlock sweater is knitted on a circular knitting machine, two banks of needles—a vertical bank in the cylinder and a horizontal bank in the dial—are used. Each bank of needles consists of two groups, one group from each bank taking yarn

from a different yarn feed than the members of the other group. A turntable supports cones of yarn, guiding and tension devices, and mechanisms variously called yarn feeds or yarn carriers which feed the yarn to the needles. As the turntable spins about the needles, cams cause the needles to operate in proper sequence so that, as the appropriate yarn feed passes by, the correct needle will be extended and take yarn and later be withdrawn to knit the stitch.

When cuffs come to be knitted, only one group of needles from the cylinder and one group from the dial are used, and two strands of yarn are fed simultaneously to the needles which are knitting at alternate yarn feeds so that the single rib of the cuff will have the same weight as the body of the sweater.

Prior to the plaintiffs' patent, in changing from interlock to rib and vice versa in a continuous operation, mechanisms known as stripers were employed. These, besides being rather complicated structures, necessitated slowing down of the knitting operation. The stripers fed the additional yarn to the needles knitting the cuff and cut and held it when the cuff was completed. The Philip patent does away with need for stripers, simplifies the whole operation and makes it posssible to knit the cuff at the same speed as the body of the sweater was knitted.

The method of the patent accomplishes its purpose by the use of a machine in which certain yarn feeds are movable and are caused periodically to rise and swing away from the group of needles proximate thereto while the yarn which has been thus bypassed is guided to fixed yarn feeds, each of which trails one of the movable feeds. The fixed feeds are specially formed with notches so that they may catch the yarn from the displaced feeds and deliver it to a new group of needles simultaneously with the yarn from the fixed carriers. When it is desired to knit interlock, the carrier is simply moved back to its original position thus enabling the adjacent needles to take yarn.

"It is evident that the processes defined by (the claims) are intimately related to the particular apparatus disclosed. That apparatus will inherently carry out the steps set forth in the appealed claims, and the application does not disclose any other use to which the apparatus may be put. Conversely, the application does not suggest any way in which the steps claimed can be carried out except by the use of the apparatus disclosed." This statement from In re Washburn, 182 F.2d 202, 205, 37 CCPA 1094, is true in all respects of the Philip patent and it is at once apparent that the method claims of the patent in suit are descriptive of the operation of the machine of the specification and drawings.

"It is now well settled that operations which consist entirely of mechanical transactions, and which are only the peculiar functions of the respective machines which are constructed to perform them, do not constitute processes which are patentable in the United States," Black-Clawson Co. v. Centrifugal Engineering & P. Corp., 6 Cir., 83 F.2d 116, 119, or, as this Court put it in Jacquard Knitting Machine Co. v. Ordnance Gauge Co., D.C., 108 F.Supp. 59, 63, "A method patent will not be sustained if it is merely a description of the way in which a machine works."

To what use can a mechanism such as the attachment of the plaintiffs' patent with its displaceable yarn feeds and guides be put other than changing the knitting pattern without reducing speed, and how can a method of operating a multifeed knitting machine, the first step of which is the displacing of some of the yarn feeds to shift the yarn away from the needle bank, be carried out except by apparatus having some movable yarn feeds which can be displaced to shift the yarn in that manner? This patent does not suggest any way in which these operations can be carried out other than by the claimed apparatus. The displaceable yarn feeds, the yarn guides, the fixed feeds with their notches to catch the yarn, are the elements which together

make up the whole of Philip's invention, and their function is to carry out the method of claims 20 and 21 and nothing else. The specification states, "the gist of the invention is the structure of the two types of yarn feeds mounted on the turntable and the mechanism which is provided for shifting adjustable yarn feeds," and Mr. Philip's testimony is to the same effect.

■ There is only one way in which an inventor can patent a method of operation which his apparatus is capable of carrying out and that is that the method "must be one capable of being carried out by other means than by the operation of his patented machine, and, unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out," Black-Clawson Co. v. Centrifugal Engineering & P. Corp., supra, 83 F.2d page 119. The patent in suit does not point out any means of carrying out the claimed method other than by Philip's described and claimed apparatus. Nor does it appear that other means are known or within ordinary skill and judgment. Any attempt to practice the method by hand would be absurd and possibly disastrous. It cannot very well be said that the method of operation of the *defendant's* "AI" machine is inherent in the Philip patent disclosure and available to one of ordinary skill and judgment. It is significant that a patent covering the "AI" machine was subsequently granted—necessarily based upon the opinion of the Patent Office that the method of its operation was not obvious to the man ordinarily skilled in the art.

Quoting once again from the opinion in In re Washburn, supra, 182 F.2d page 206, " ' * * * appellants' so-called process is inseparably connected with the apparatus described by them, and for which they have been allowed claims. Their invention was not complete without apparatus with which to apply the process, and as the apparatus itself was inventive, and no other means are shown for applying the process, we do not see how it could be said that the process

claims and the apparatus claims are both allowable.' "

It should be noted that the apparatus claims are largely "means claims." This being so, it is difficult to see how the claimed method could be practiced without apparatus essential parts of which are claimed as means to carry out the method.

■ I hold that the claims in suit are invalid because directed to the functions of a machine.

■ The defendant asserts that both the original and the reissue patent fail to disclose an operable machine. I am satisfied (and both the inventor and the defendant's expert reached the same conclusion) that one skilled in the art looking at either the original or the reissue specification would understand its disclosure and be able to practice the invention.

■■ There is no doubt that the machine covered by the apparatus claims of the patent enjoyed very substantial commercial success. Such success is relevant only where the question is as to the obviousness of the invention and that it is in doubt. In the present case the method claims have been held invalid not because of obviousness of the invention in view of the prior art but because they are drawn to the functioning of a machine. However, I believe the plaintiffs are entitled to have me say that the prior art introduced by the defendant does not satisfy me that Philip's invention was obvious.

Approved practice requires me to deal with the issue of infringement notwithstanding the holding of invalidity.

The defendant's "AI" machine, the operation of which is charged to be an infringement, is quite different from that described and claimed in the Philip patent. In the defendant's machine the yarn feeds are all fixed in position, are never displaced, and always supply yarn to immediately passing needles. When a change is made from interlock to rib knitting, instead of the feeds being withdrawn from the needle bank, the needles

are withdrawn from the feeds. The needles of the other groups, instead of being withdrawn as they pass the yarn feeds where the then withdrawn group would have knitted in interlock, are extended and take the yarn from those yarn feeds. The yarn remains on these needles until they reach the next yarn feed (where they normally knit), at which point they take additional yarn from that yarn feed and knit both yarns together. This change in needle operation is accomplished by means of cams, and the machine operates at a slower speed during the transition. When the rib section is finished, the interlock cams are brought into play and the needles resume knitting at their normal stations.

Assuming then, arguendo, the validity of the claims, the case for infringement rests entirely upon the doctrine of equivalents. Counsel for the plaintiffs, in the course of his argument, stated the case as follows: " * * * his (Philip's) apparatus doesn't have the type of mechanism which is in the accused machine, which we say is the equivalent thereof * * * when we look at the accused machine to find the gist of the infringement, Your Honor, you find it in the elements that we assert to be the equivalent of the movable carrier."

Resort by the plaintiffs to the doctrine of equivalents was necessitated by the limits of their claims. The Philip application originally contained a method claim (No. 10, later renumbered 19) claiming "the method of cyclically changing the pattern of knitting which comprises increasing the number of strands of yarn fed by each of certain spaced feeds by transfer of yarn thereto from certain other feeds, and then decreasing the number of strands of yarn fed by each of said certain spaced feeds by return of yarn therefrom to said certain other feeds." This claim did not tie the method to any apparatus and makes no mention of either the displaceable yarn feed, the guide, or the yarn-catching elements of the trailing fixed feed. It was quite broad enough to cover the method of the defendant's machine and, had it been allowed, the plaintiffs might well have been sustained on the issue of infringement. However, following the final interview with the Examiner, the claim was surrendered and cancelled, presumably to avoid rejection. Mr. Philip testified in the trial of this case that this cancelled claim described the method of his invention, and he may not argue that the claims in suit are to be interpreted to mean the same thing as the claim which he surrendered. Unless, therefore, the claims in suit can be somehow substantially broadened by the doctrine of equivalents, there is no infringement.

Equivalence is a question of fact upon which the trial judge must exercise his best judgment. I can only say that to my mind the differences between the defendant's machine and one which operates according to the method disclosed by the patent in suit are so great that the method practiced by the former cannot be held to be the equivalent of that practiced by the latter. Of the steps recited in claim 20 (displacing the yarn feeds, transferring the shifted yarn to a next trailing yarn feed, and returning the displaced yarn) none are employed in the accused machine. Taking the Philip specification at its face value, the gist of the invention—shifting yarn by means of a displaceable yarn feed —is not to be found in the defendant's method. I do not think that retracting certain needles by means of cams so that they cannot reach and engage the yarn (the method of the defendant's machine) is the equivalent of shifting the yarn out of reach of the needles and away from the entire needle bank. It is highly significant that the patent specification says, "The invention has nothing to do with shifting the order of needle operation."

It may be conceded that the method practiced by the defendant's "AI" machine accomplishes substantially the same result as the Philip invention. It is slower in its operation but, according to the defendant's expert, is a better machine. However, the fact that the method of an accused machine reaches the same result as the machine of a patent,

while evidentiary, is by no means conclusive that the two methods are equivalent.

I, therefore, hold that the claims in suit, if valid, are not infringed by the operation of the defendant's "AI" machine.

In addition to noninfringement, the defendant has raised a number of defenses which may be grouped together as "reissue defenses." The only ones which require discussion have to do with alleged procedural defects in the application for and prosecution of the reissue.

The statute, 35 U.S.C. § 251, provides for the amendment and correction of patents by means of a reissue. The right to a reissue arises whenever the patent is, "through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing * * *," subject to the provision that "No new matter shall be introduced into the application for reissue."

During the prosecution of the reissue application which was originally filed to obtain fabric claims (not allowed), the Examiner rejected all claims of the original patent as based upon insufficient disclosure. Without conceding that the Examiner's view was correct, the applicant introduced additional drawings and descriptions which, when incorporated into the specification, amplified the description of the machine. The supplemental oath recited that, in so far as the original patent might be deemed inoperative by means of a defective specification or drawings, such defect arose without any deceptive intention, but did not say that any error actually existed in the original drawings or specification and consequently did not claim inadvertence, accident, or mistake. Mr. Philip's prosecution of the application thereafter was, however, an acquiescence in the Examiner's view that the original specification and drawings were defective and the machine disclosed inoperative—at least for the purpose of the proceedings in the Patent Office.

In Benger Laboratories, Limited v. R. K. Laros Company, D.C., 209 F.Supp. 639, this Court had occasion to deal with a somewhat similar question and decided that the statute was drawn with the intention of giving the Commissioner a degree of discretion and that, if the Commissioner decided (deemed) that the patent specification or drawings were wholly or partly inoperative, reissue would be proper. In the present case the Commissioner clearly deemed the specification and drawings to be defective since he rejected them, and the patent was issued only after suit in the District Court for the District of Columbia.

In addition, the action of the District Court in ordering the reissue gives rise to the presumption that the requirements of law were complied with and the record supports this presumption in that it discloses that such error as there was was an error on the part of the applicant as to the view that the Patent Office would take of his specification, and his acquiescence in that view is sufficient. Instead of taking an appeal immediately, he amended and continued the prosecution of the patent.

It is argued that the supplemental oath did not comply with the Patent Office rule, but the Commissioner did not raise any objection in this regard, and this Court will not, on behalf of an alleged infringer, review the Commissioner's interpretation of his own rules.

Whether or not the Examiner was correct in objecting to the original specification as disclosing an inoperative device, it and the drawings did disclose a view, albeit fragmentary, of an interlock knitting machine and, in at least one place in the text, contained language which one skilled in the art would have known referred to interlock knitting. The amendatory matter merely made more explicit and clear the details of the machine and cannot be regarded as new matter outside the scope of the original specification.

None of the remaining reissue defenses need any discussion but may be dealt

with by affirming the following requests for findings of fact:

Claims 20 and 21 of the reissue patent in suit appear in identical words as claims 20 and 21 of the Philip original patent. Title 35 U.S.C. § 252 confers no intervening rights on the defendant.

The facts asserted by the defendant here are insufficient to constitute the defense of laches.

Judgment may be entered for the defendant.